**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-cv-62231-AHS**

**HEALTH BUSINESS SOLUTIONS, LLC, a Florida limited liability company**
**Plaintiff,**
**v.**

**INSIGHT CHICAGO, INC., a Foreign Profit Corporation,**
**Defendant.**

**Removed From: 17th Judicial Circuit in and for Broward County, Florida, Case No.: CACE-25-014728**

**DEFENDANT-COUNTERPLAINTIFF INSIGHT CHICAGO, INC.'S PROPOSED RULE 26(F) DISCOVERY PLAN, AFTER JOINT TALKS FELL THROUGH**

Defendant-Counterclaimant Insight Chicago, Inc. (**"Insight"**) hereby provides the following statement and proposal in connection with its obligations to respond to the Court's December 1, 2025 Order (Dkt. No. 14.):

**Background of Parties' Joint Discussion; Reason for a Unilateral Plan:** On December 2, 2025, counsel for Defendant-Counterclaimant Insight sent an email to counsel for Plaintiff-Counterdefendant, Health Business Solutions, LLC (**"HBS"**), in order to promptly confer and prepare a joint plan in accordance with the Court's Order.

To attempt to narrow the issues, counsel for all parties conferred via telephone in three meetings each lasting roughly 45 minutes to an hour on Thursday, December 4, 2025, Tuesday, December 9, 2025, and Monday, December 15, 2025 – with a final meeting set for Wednesday,

December 17 that was not completed. Plaintiff's presumptive lead counsel, Mr. Olive, did not join the December 4 meeting but actively participated in meetings on December 9 and 15.

The initial meeting on December 4 was fruitful. Despite Insight's inquiries about Mr. Olive's attendance, HBS's two attending lawyers insisted firmly that they were fully authorized and prepared to proceed without him. The parties discussed the Court's Order and the Local Rules. Plaintiff HBS said it anticipated filing an Answer to the Counterclaim (rather than any motion), agreed that this case warrants a "complex" treatment under the Court's Local Rules, and proposed early mediation efforts with Glenn Waldman, Esq., to which Defendant Insight was amenable. The parties also agreed to stipulate to vacate the default entered in state court, as well as to work on a protective order. Plaintiff's counsel adjourned requiring time to confirm with their client how long early e-discovery efforts would require.

In meetings on December 9 and 15, Mr. Olive first raised HBS's counsel's new, other-contract issue, expressing its new desire to arbitrate the claim/lawsuit it previously filed. As briefed elsewhere, the law imputes knowledge of all these contracts to HBS (as signatory) and to its counsel, although Mr. Olive said he only actually learned about it in the last couple days. Of significance, Plaintiff HBS had not been under any statute-of-limitations time pressure when it investigated its case about recent invoices dating from June 2023, voluntarily chose to negotiate and make pre-litigation demands based on its Florida-based Complaint-Exhibit 1, and further elected to file this collections lawsuit on its home turf in the Florida courts based on Complaint-Exhibit 1, relying thereupon to invoke Florida law under a contract-specific provision.

In the meetings on December 9 and 15, Defendant Insight sought to understand the new position. On December 9, Insight asked for a copy of the contract that HBS hoped to invoke, in order to evaluate the provision. In response, HBS provided Insight with *one of two* new contracts

(totaling three) upon which Plaintiff HBS now desires to rely for its claim—i.e., the one presented being the Tennessee "Master Services Agreement," which itself does not contain any fee or invoicing provisions to support relief. (*Compare* Dkt. No. 16.) The third, newly discovered agreement did not appear until Plaintiff attached it to Dkt. No. 16.

Meanwhile, on December 15, Insight sought explanations for how HBS could nonfrivolously maintain its new position under the Tennessee agreement, given its prior position and lawsuit under Complaint-Exhibit 1. Defendant-Counterclaimant Insight relied on Complaint-Exhibit 1 (which lacks any arbitration provision), when electing to remove this case to a federal forum, which lacks the same bright-line rules as Florida about the waiver that should prohibit this arbitration. Without explaining that matter but rather simply insisting on the application of the new contract, HBS asked whether there were any conditions on which Insight would consent to arbitrate the matter. Insight initiated discussions with its client to consider the issue. The parties agreed to reconvene on the afternoon of Wednesday, December 17, which HBS's counsel described as "aggressive" (or very quick) to reach such a weighty decision.

On December 16, 2025, and before the date set for Insight to consider and respond to the consent-request, Plaintiff HBS terminated its participation in meetings due to its new insistence that its own Complaint cited the wrong agreement and that a different Tennessee-based agreement instead governs its claim and requires arbitration. In addition, and rather than handling its own case in a uniform, orderly way, Plaintiff HBS engaged in claim-splitting and filed for arbitration with the AAA on December 16, 2025 before this Court had a chance to hear the issue—including HBS's own motion to compel arbitration.

For reasons set forth below in the Statement of the Case and in further filings, Plaintiff HBS waived arbitration when it voluntarily selected this nearby, inexpensive, local Florida forum

and Florida law for its collections-Complaint, as preferred over any Tennessee or Illinois forum or Tennessee law. The doctrines of waiver, claim splitting, equitable estoppel, judicial estoppel (as it informs the equitable estoppel analysis), collateral estoppel (as it relates to claim-splitting) and other doctrines all overwhelmingly undermine and proscribe Plaintiff's clear gamesmanship in correcting what—at best—might be a material 'Oops' and at worst is willfully deceptively manipulative.

For similar reasons, as well as additional ones, Defendant Insight will also be filing objections and responses to Plaintiff HBS's post-Counterclaim request to voluntarily dismiss its claims under Rule 41(a)(2). (*Compare* Dkt. No. 15.)

In accordance with the Court's practice and its December 1, 2025 Order (Dkt No. 14), Defendant- Counterclaimant Insight submits the following plan:

(1) **Fed.R.Civ.P. 26(f)(3)(A): Changes to the Timing, Form or Requirements of Disclosures and Exchanges:** The parties have read the Court's December 1, 2025 Order on discovery. As a result of joint discussions that terminated, Defendant Insight has developed the following discovery plan that is as consistent as possible in good faith with the dates and basic positions that its opponent, Plaintiff HBS, previously consented to and/or proposed. Defendant Insight obviously differs substantially on matters relating to the arbitration issues and sets forth its own positions in that regard. Defendant Insight recommends that the Court enter an Order along the following lines:

**Preliminary Notes About a Complex Track:** Being reasonably familiar with the Court's local rules, expectations and practice, the parties had expressly agreed that this is a "Complex Track" case throughout their discussions.

Plaintiff's claim involves up to four years of invoices and presumably detailed billing records concerning thousands (tens or hundreds of thousands?) of patients and their bills. The factual and legal issues in this case are reasonably complex involving detailed financial transactions over a course of almost five (5) years, sophisticated regulatory requirements. The relevant staff members and executives number on the order of 50 or more potential witnesses. Insight's Counterclaim for fraud and deceptive practice involves detailed review of years' worth of statements and information that are currently denied to Insight, as well as more complex forensic accounting and expertise. The trial can easily and reasonably be expected to boil down to at least 8-10 key lay witnesses and 2-4 expert witnesses *per side*, which would likely amount at least to a 10-day trial. The Complex Track is especially warranted in light of new complications and delays due to Plaintiff HBS's efforts to arbitrate its own lawsuit.

Court intervention through other motions might be anticipated. *But* the parties can aim to keep the size and scope of the case reasonably limited for a complex case. Thus, the parties could anticipate that a total period of 12 months should suffice for lay and expert discovery. Document production schedules and witness scheduling issues can be expected to be difficult, in light of the sheer number of documents and witnesses. Efficient and cooperative work can keep the schedule to roughly a year. Importantly, this schedule could also allow time for *early settlement efforts*, without prejudicing such efforts through unnecessary early discovery costs and battles.

If the case must proceed despite settlement efforts, then if all parties participate timely in discovery and any issues of joinder or amendment are promptly resolved, the parties had believed that all discovery proceedings could still be completed by December 22, 2026. If protracted issues of disclosure, joinder or amendment arise, the parties will inform the Court and propose appropriate changes.

(a) Fed.R.Civ.P. 26(a)(1) initial disclosures: In light of the impending holiday season and the Plaintiff's prior comments about time needed to gather its discovery, a moderate extension for the Initial Disclosures is recommended from January 5, 2026 (14 days from this submission, *compare* Fed. R. Civ. P. 26(a)(1)(C)) to Friday, January 23, 2026 for current Plaintiffs and Defendants. Although Plaintiff previously provided simpler Initial Disclosures in its state-court documents, additional time is needed for more robust and meaningful federal compliance to advance the case on an aggressive scheduling track. It had then been anticipated that all the billing-related records—being a significant volume of information and central to this case—could be produced within that period. As to all other parties added, within 30 days after being served or joined, per Fed. R. Civ. P. 26(a)(1)(D).

(b) Fed.R.Civ. P. 26(a)(2) expert disclosures: The parties have viewed this as a Complex Track-case. On a complex Track, Discovery would close by on or about December 22, 2026, which the parties would propose as a closing date. Under ordinary timing, expert disclosures would be due by the close of discovery, in relation to the trial date under the 90-/30-day schedule set by Fed. R. Civ. P. 26(a)(2)(D).

(c) Fed.R.Civ.P. 26(a)(3) pre-trial disclosures: Defendant Insight recommends that except for proper 30-day expert disclosures, and except for any items not received by the putative disclosing party until a time nearer to trial, that all disclosures should be made and completed at least **45 days** before trial, upon pain of exclusion from trial except upon a showing by the disclosing proponent that the evidence is newly discovered (and reasonably so) or that there has been reasonable and excusable neglect in making the disclosure.

(d) Fed.R.Civ.P. 26(a)(4) form and/or other disclosure issues: Defendant Insight recommends that service of all attorney-drafted disclosure documents and copies of all other

evidentiary items in this matter can be made electronically, through means reasonably designed to provide notice to the other party(ies) and an actual ability for them to receive the items (e.g., usually by email, although possibly by file-sharing methods for large items). Pending additional information from Plaintiff HBS, Defendant Insight does not currently anticipate needs for other alterations to the discovery rules or schedule.

(2) **Fed.R.Civ.P. 26(f)(3)(B): Subjects, Completion and Phasing of Disclosures and Exchanges:** At this time, there are no expected limitations on the basic subjects of discovery, within the ordinary bounds of relevancy. The claims involve breach of contract, as well as account stated, common-law fraud and statutory fraud (FDUTPA). For the most part, a variety of business, financial and asset-related discovery can be anticipated. *However*, one might anticipate that there might be disputes for the Court to resolve as to the scope of discovery. Discovery currently need not be conducted in phases.

As for amendments that might impact discovery, it is foreseeable that HBS's sole member, Ray Berry, might be added personally as a Counterdefendant to the fraud-based claims, and that the defense of claim-splitting (and any other waiver or estoppel-related defenses) would be added, if necessary, in light of Plaintiff HBS's recent efforts at arbitration.

(3) **Fed.R.Civ.P. 26(f)(3)(C): Electronically Stored Information:** Initially, the parties anticipated ordinary cooperation on electronic discovery, which could be expected to include items such as communications, billing and payment records, electronic contract-related documents, and financial records. Defendant Insight will currently presume the continuation of good-faith, cooperative efforts in that regard. Barring matters such as authenticity, authentication or spoliation, ordinary copies in .pdf, .jpeg, .tif and other common formats will suffice. The parties had not anticipated imminent disputes over such matters.

(4) **Fed.R.Civ.P. 26(f)(3)(E): Privilege or Protection:** The relevant information includes medical, financial and otherwise private information that can be readily addressed through a reasonable protective order. Defendant Insight circulated a proposed-stipulated order before talks broke down. Assuming the claim proceeds in this Court, rather than in arbitration, the parties can be expected to work together to submit a proposed, stipulated, mutual protective order no later than January 23, 2026, or as soon after the Court's Orders on pending motions make such a submission practicable.

Otherwise, at this time, Defendant Insight does not anticipate additional privilege or protection issues. It is possible that the parties' respective defenses and/or events related to settlement talks might raise privilege issues. In any event, to this point, the parties had not anticipated disputes over how to resolve such privilege issues between themselves.

(5) **Fed.R.Civ.P. 26(f)(3)(E): Other Changes or Limitations in Discovery:** At this time, there are no expected limitations on the subjects of discovery, within the ordinary bounds of relevancy.

(a) Discovery Budget: Discovery costs for Defendant-Counterplaintiff Insight, including attorney fees, can be expected to reach hundreds of thousands of dollars. Insight Chicago, Inc. has been specifically advised by counsel about the estimated discovery costs above and has approved.

Especially in light of these anticipated costs and the amount in controversy, efforts at early mediation seem desirable.

(6) **Fed.R.Civ.P. 26(f)(3)(f): Other Orders:** Plaintiff HBS has the pending motions concerning the voluntary dismissal and compelled arbitration of its own lawsuit. As of the time of this drafting, HBS also called to seek concurrence in a motion to extend this deadline. While Defendant Insight would have been amenable to a concurrence if asked last week (e.g., on

December 17), it denied concurrence because it cannot simply disregard this Court's Order to respond.

For its own part, and absent a voluntary withdrawal or suspension of Plaintiff HBS's newly filed, competing arbitration of the same claim, Defendant Insight anticipates a motion to enjoin that arbitration, as well as a motion to vacate the default that Plaintiff HBS sought and obtained in its state-court litigation before removal.

To Insight's knowledge, the parties do not currently seek other orders, especially not ones concerning discovery or scheduling. Once the arbitration-related issues are decided, it is unclear whether other motions or issues will impact the schedule.

(7) **Fed.R.Civ.P. 26(f)(2): Other Pertinent Matters:**

(a) Jurisdiction: Each party has in some pleading or motion confirmed that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff HBS is a Florida limited liability company, having its headquarters, operations, principal place of business and sole member in Florida. Defendant Insight is an Illinois corporation with its headquarters and operations there. The amount in controversy substantially exceeds $75,000.00.

(b) Jury or Non-Jury: The parties might contest whether the claims are subject to a jury waiver, but HBS has filed and presented the matter as one requiring a bench trial.

(c) Statements and Summaries of the Case:

*Plaintiff's Statement:* [Not participating.]

*Defendants' Statement:* This case concerns commercial invoices dating from June 30, 2023 at the earliest, and a relationship tracing to mid-2021. In 2021, Defendant-Counterclaimant Insight overtook and began to operate a formerly bankrupt and essential community hospital in Chicago. The Plaintiff-Counterdefendant HBS was a legacy service provider to the older hospital, with

responsibilities for collecting its medical bills. Before HBS initiated this litigation, the parties engaged in years-long, pre-litigation efforts to resolve apparent discrepancies in HBS's invoicing practices and find an agreeable path forward.

HBS apparently relied upon a particular contract (i.e., Complaint-Exhibit 1) in its lengthy pre-suit discussions and negotiations with Defendant-Counterplaintiff Insight. It sometimes apparently sought amendments to that same contract, related to insurance invoicing and denials. It certainly relied upon Complaint-Exhibit 1 in its termination notice and its pre-litigation demand for payment of these invoices. (*See* Compl. Exh. 2 and Dkt. No. 1 at 34-46.) By September 2025, the discussions and negotiations abruptly stopped, as HBS chose to sue.

As a logical matter, HBS's counsel either performed its ethical duty to conduct a reasonable investigation of its claims, or it did not. Presuming that it *did*, it still had years left on the Florida statute of limitations, Fla. Stat. § 95.11 (5)(a), and it had plenty of time to consider and make its election to sue, as well as to choose the contract under which it would sue.

Having deemed itself to have adequately considered the matter, Plaintiff HBS elected to file its Complaint in Broward County, FL on or about <u>September 29, 2025</u>, specifically relying on Complaint-Exhibit 1 to invoke Florida law under a contract-specific provision. As pled, Plaintiff HBS's claim involves roughly $7.8 million in specific invoices, plus a contract-specific request for attorney fees that applies to *either* party who prevails here on the contract HBS invoked (i.e., Compl. Exh. 1).

On or about October 6, 2025, HBS not only served the Complaint, but also conducted discovery. On that day, it served initial disclosures (*see* Dkt. No. 1 at 51), interrogatories (*see id.* at 54), requests for admission (*see id.* at 60), and document requests (*see id.* at 64). Then, on or about October 26, 2025, Plaintiff HBS successfully filed a motion for the entry of a default. In

other words, it seemingly had achieved what it wanted; namely to have a cheap, fast, self-convenient local forum to snap up a quick decision on its collections claims against an Illinois Defendant unfamiliar with the local terrain.

By November 26, 2025, and based on the Complaint as it existed, Defendant removed the case to this Court and filed its Answer, Affirmative Defenses and Counterclaim. Defendant-Counterclaimant Insight relied on Complaint-Exhibit 1 (which lacks any arbitration provision), when electing to remove this case to a federal forum, which lacks the same bright-line rules as Florida about the waiver that should prohibit this arbitration.

Plaintiff's Answer to the Counterclaim was due on December 17, 2025. Instead, on December 16, it filed an arbitration on the same claim, and on December 17, it moved to compel arbitration of its own lawsuit, as well as to voluntarily dismiss its claim, after a counterclaim had already been pled. Defendant Insight does and will object to that dismissal for substantive and prejudicial reasons. Among other prejudices and defects, Plaintiff's new seeking of arbitration would apparently deny depositions and interrogatories on any claim, which—from its likely viewpoint—could potentially and prejudicially deny those necessary discovery devices for Insight's fraud claims, if they are covered. The newly presented contracts would also choose the foreign Tennessee law—not familiar to either party—after HBS already sought to benefit from its local Florida law under the first contract it presented to these Florida courts.

In a pending Motion to Compel, Plaintiff HBS now admits that its original claim under Complaint-Exhibit 1 is wrongly founded, takes the new position (after many months of discussions) that this contract does not apply to the claim, and instead hopes to launch the claim in a new direction under a different contract. (Dkt. No. 16 at 1-2.) At the very least, that means Defendant Insight prevailed on the claim under Complaint-Exhibit 1 and is due a judgment under

that contract for the payment by HBS of *all* of the fees and costs that it has and will expend in defending against Complaint-Exhibit 1.

As for the Counterclaim, Defendant-Counterclaimant Insight summarized the basic *claim*—i.e., the common nucleus of operative facts, upon which legal counts are based—as follows:

This case is about the efforts of a well-run non-profit healthcare provider (Insight) to revitalize a bankrupt hospital that provides critical services to a poor community, as well as the efforts of an abusive legacy medical collections company (HBS) to fraudulently extort payments from the new owner after HBS's poor service helped to bankrupt the old owner.

In the 4.5-year history since Insight assumed control, Insight has constantly met, haggled, debated and discussed with HBS the shortcomings in both HBS's sub-standard services and its professional invoices. In these discussions, HBS had Insight 'over a barrel' because HBS is so entrenched in the antiquated billing system upon with the hospital relies that any disturbance to HBS's engagement causes debilitating interruptions. Yet the services did not improve, except at times when Insight did them itself. Each year in 2023, 2024, and 2025, Insight received a warning letter from federal regulators that the billing services for which HBS now demands payment were, in fact, materially deficient and non-compliant with federal law for extended periods. Meanwhile, throughout those years, HBS's unreliable approaches to its own records, accounts, invoices and reports manifested material internal conflicts (sometimes $40,000,000.00 worth of conflicts) among its own data and statements. HBS couldn't seem to explain or keep its financial story straight, but the invoices kept coming and its demands were ardent. Especially in the interest of the residents that Insight serves, Insight tried to work fairly, reasonably and at length with HBS to correct the errors. But by September 2025, talks broke down.

Through this case, HBS continues its pattern of making exorbitant demands upon threats of business disruption. Its Complaint relies upon a contract that expressly doesn't cover its claims and an 'account-stated' that materially departs from HBS's own invoices by millions of dollars, and for which even the underlying invoices were regularly and thoroughly disputed. Its position, in short, appears to be another fraud in a pattern of frauds. So far, those frauds have cost Insight anywhere between roughly $3,500,000.00 and $35,000,000.00, depending on which failures, breaches and frauds one is addressing. For the reasons that follow, Insight is entitled to various actual, consequential and punitive damages, as well as attorney fees and costs.

Defendant-Counterclaimant Insight then pled six counts: two for prior, material breaches of contract causing millions of dollars in damages, as well as one each for common law fraud, fraud in the inducement, deceptive billing practices under the FDUTPA, Fla. Stat. Ann. § 501.211(2), and negligent misrepresentation. As noted, the relevant damages range anywhere between roughly $3,500,000.00 and $35,000,000.00, plus some punitive damages, as well as attorney fees and costs—depending on which count one is analyzing.

As this is case has been narrowly pled and circumscribed, Defendant-Counterclaimant Insight does not currently intend to withdraw any counts.

(e) Mediation, Other ADR, and Early Prospects of Settlement: The parties discussed early mediation of the lawsuit, and Plaintiff HBS proposed Glenn Waldman as the mediator while knowing that Mr. Waldman is a partner at the Gunster law firm. Insight has reaffirmed a firewall around Mr. Waldman, and Insight would agree to early mediation before him. Throughout discussions, all the parties reaffirmed an election of Mr. Waldman. Mr. Waldman is probably the only qualified person that the parties could engage within 30 days from any order here.

As for arbitration, last Wednesday, Plaintiff HBS submitted two entirely different contracts (still dating to 2021), now seeking to compel arbitration of its own lawsuit. Those contracts would choose the foreign Tennessee law—not familiar to either party—after HBS already sought to benefit from its local Florida law under the first contract it presented to these Florida courts. Defendant Insight maintains that Plaintiff HBS voluntarily waived its arbitration arguments and is estopped and otherwise barred from claim-splitting and advancing different contracts in different forums for the same claimed invoices. Plaintiff HBS's new approach would also apparently deny depositions and interrogatories on any claim, potentially—from its viewpoint—denying those necessary discovery devices for the fraud claims, if they are covered. That gamesmanship, undue advantage (in light of its prior election), and hidden limitation would be inappropriate.

(f) Joinder of Parties and Amendment of Pleadings: It is foreseeable that Defendant-Counterclaimant Insight might amend its Counterclaim to add HBS's sole member, Ray Berry, personally as a Counterdefendant to the fraud-based claims, and that Insight would add the defense of claim-splitting (and any other waiver or estoppel-related defenses), if necessary, in light of Plaintiff' HBS's recent efforts at arbitration. These amendments could be completed within 60 days. It is unknown if discovery will reveal other necessary or important amendments.

(g) Additional Court-Mandated Deadlines: As for a deadline for mediation, the parties had anticipated starting mediation efforts early, and there is no reason why they cannot complete it before the dispositive-motion deadline. The parties had not currently foreseen any need to modify the Court's ordinary deadlines for dispositive motions, *Daubert* motions, pre-trial stipulations, jury-instructions, verdict forms, or proposed findings of fact and conclusions of law, although the

latter trial-based items were not subject to significant discussion. Defendant Insight proposes to accept the Court's proposed schedule on such matters. (Dkt. No. 14 at 3.)

*/s/ George S. LeMieux*
George S. LeMieux

**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: 954-468-1383
George S. LeMieux, Esq.
Florida Bar No. 16403
glemieux@gunster.com
eservice@gunster.com
mzayas@gunster.com
Lauren A. Marcil
Florida Bar No.: 1002832
lshumate@gunster.com

**CLANCY ADVISORS, PLC**
Saura J. Sahu
2723 S. State Street, Suite 150
Ann Arbor MI 48104
Telephone: 734-780-7595
sahu@clancyadvisors.com
www.clancyadvisors.com

*Attorneys for Defendant, Insight Chicago, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ George S. LeMieux*
George S. LeMieux, Esq.