## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:25-cv-62231-AHS

| | |
|---|---|
| **HEALTH BUSINESS SOLUTIONS, LLC, a Florida limited liability company**<br>**Plaintiff,**<br>**v.**<br><br>**INSIGHT CHICAGO, INC., a Foreign Profit Corporation,**<br>**Defendant.** | **Removed From: 17th Judicial Circuit in and for Broward County, Florida, Case No.: CACE-25-014728** |

### DEFENDANT-COUNTERCLAIMANT INSIGHT'S *EXPEDITED* MOTION TO ENJOIN ARBITRATION (*by Dec. 29, 2025*) AND SUPPORTING MEMORANDUM OF LAW

### REQUEST FOR HEARING[1]

Under Local Rule 7.1(b)(2), Defendant-Counterclaimant Insight Chicago, Inc. (**"Insight"**) respectfully asks for an expedited hearing on the following expedited motion to enjoin arbitration. Insight respectfully proposes fifteen minutes for each side to argue its points in chief, and an additional five minutes for any legitimate reply or surreply.

A hearing is necessary, in general, because the current dispute is relatively factually complex; involves a new, plaintiff-generated time pressure that forestalls the Court's unhastened digestion of the circumstances in writing; oral allocutions can help when a court may have questions both sides; in any event, the situation requires a clear, consistent, coherent and

---

[1] Under LR 7.1(c)(2), the Request for Hearing does not count against the Motion's page limitations.

i

*accountable* statement to the Court about what the parties have intended to seek from this Court or any other forum. While (a) Plaintiff-Counterdefendant, Health Business Solutions, LLC's (**"HBS"**) Motion to Compel admits in a footnote that it seeks to arbitrate the same invoices that it attached to its Complaint, (Dkt. No. 16 at 2 n.2); and (b) privately says the arbitration concerns the same invoices, its non-specific Demand for Arbitration does not openly identify that conflict, HBS should be required to fully and clearly articulate its position in front of this Court, and a hearing is the most efficient way. Inappropriate claim-splitting and forum-shopping are palpable issues here, along with waiver and estoppel.

An *expedited* hearing and ruling is necessary due to the upcoming and impending deadlines in HBS's newly filed arbitration. On December 16, 2025, HBS filed a Demand for Arbitration with the American Arbitration Association ("AAA"), and on December 18, 2025, HBS served Insight with an Arbitration Notice, stating it was "seeking approximately $9,000,000 in damages (exclusive of attorneys' fees and costs) for unpaid Services." (*See* **Exh. A**: Arbitration Materials.) Insight's answer to the arbitration is due at least by January 5, 2026, and an Administrative Conference Call is also scheduled for January 5, 2026. An expedited hearing and decision on this motion is needed by December 29, 2025, so that Insight may prepare for and comply with relevant deadlines, and further, to determine whether Insight needs to defend in arbitration at all.

## MOTION AND MEMORANDUM

Defendant-Counterclaimant Insight moves for an expedited hearing and decision under Local Rule 7.1(d)(2), seeking temporary, preliminary, and ultimately permanent injunctive relief under the expansive and flexible All Writs Act, 28 U.S.C. § 1651, to enjoin a duplicative, claim-splitting arbitration that Plaintiff-Counterdefendant Health Business Solutions, LLC (**"HBS"**) commenced on December 16, 2025. An answer to that duplicative arbitration—to which Insight does *not* consent—is facially due to the American Arbitration Association at least by Monday, January 5, 2026, thus creating this time exigency.

HBS seeks to force arbitration of the *same claim* that is the subject of its lawsuit, a lawsuit which HBS voluntarily chose to file first in the Seventeenth Judicial Circuit in and for Broward County Florida. Not only did HBS file a lawsuit, it sought substantial discovery, and obtained a default. Now, HBA seeks "a do over" seeking to arbitrate and disavow the contract it previously sued under.  For the reasons set forth below, Defendant-Counterclaimant, Insight, respectfully seeks an Order enjoining the arbitration by December 29, 2025, so that it may prepare and comply with any other relevant deadlines without wasting unnecessary time and effort. Insight respectfully submits the following Memorandum of Law in support of its Motion.

### I.    INTRODUCTION

HBS is the author of its own misfortune. This case presents the highly unusual situation where a plaintiff moves to compel arbitration after having already filed a lawsuit and sought discovery regarding the same nucleus of operative facts (i.e., the "claim"). Worse, HBS filed a competing arbitration demand on its own claim, without waiting for this Court to orderly decide HBS's recent motion to compel arbitration. Having already 'bought' its chosen forum, it now

shops for and already purchased another forum. Such gamesmanship 'makes a mockery' of this Court's diversity jurisdiction and its fairness to foreign litigants. It should not be countenanced.

In legal terms, HBS engages in improper claim-splitting after waiving its right to arbitrate through its election to file suit in state court and taking other, longer-term actions inconsistent with its alleged right to arbitrate. After strategically deciding to sue Insight in Florida state court for the alleged nonpayment of invoices under a Master Agreement attached as Exhibit 1 to its Complaint, HBS now changes its mind, reverses course, presents another Master Services Agreement with conflicting terms, and filed an arbitration under that agreement relating to the exact same invoices for which it already sued in court (i.e., the same claim). That is to say, until now, HBS has taken no actions under the agreement it now contends governs the parties' disputes. In fact, the newly cited agreement prejudicially prohibits depositions and the very interrogatories that HBS already served on October 6, 2025. (Dkt. No. 16-1 at 11 § 11.3.2.)

Only after Insight removed the action to federal court, filed its Answer, Affirmative Defenses, and Counterclaim, which included allegations of fraud in connection with the invoices, did HBS seek to take flight from its chosen forum here for a costly forum HBS assiduously acted to avoid and ignore not only for nearly three months of litigation, but also during pre-suit discussions.

The arbitration should not be allowed to proceed until the Court can orderly review and decide the issue. Appropriate temporary, preliminary and/or permanent injunctions under the All Writs Act facilitate the reasonable protection of the Court's jurisdiction against gamesmanship. As set forth below, Insight sufficiently establishes the merit of its arguments of claim-splitting, forum shopping, waiver and estoppel (equitable, along with relevant aspects of collateral and judicial).

Appropriately tailored injunctions against pursuit of the arbitration will properly guard this Court's jurisdiction, alleviate legal prejudice, and provide an orderly judicial disposition of the issue. Insight accordingly is entitled to the entry of an injunction under the All Writs Act barring and enjoining Plaintiff from pursuing its unusual arbitration of its own lawsuit against Insight.

## II.   STATEMENT OF RELEVANT FACTS

### A.  The Plaintiff's Claim and the Parties' Relationship.

The allegations in the parties' pleadings define the "claim" relevant to this Motion and to HBS's pending motions—i.e., the common nucleus of operative facts. *See Shannon v. Amtrak*, 780 F. App'x 777, 779 (11th Cir. 2019) (citation omitted).

According to the parties' allegations, this case involves longstanding disputes concerning HBS's billing practices and sub-standard services, along with HBS's insistence that it is nevertheless owed more money for its materially deficient services. Insight currently operates a hospital in South Chicago that it rescued from bankruptcy. Insight took control over the hospital in June 2021 and has since operated as Insight Hospital and Medical Center (the **"Hospital"**). HBS was previously one of the Hospital's billing vendors prior to Insight's acquisition, and it became Insight's only billing contractor for the Hospital after Insight took over. (Dkt. No. 13 at Counterclaim, ¶¶ 10-17.)

Billing disputes began almost immediately in 2021 and have continued since that time. Despite repeated meetings, discussions, and written correspondence with HBS concerning its deficient services and its erroneous billing, neither improved during the parties' 4.5-year relationship. Nevertheless, Insight attempted to work with HBS to correct the errors and reach an amicable resolution. But, by September 2025, discussions broke down. (*Id.* at ¶¶2, 26-27.)

On September 2, 2025, HBS sent Insight notice that it was terminating their agreement (**"Termination Notice"**). (*See* Pl.'s Compl. Exh. 2: Dkt. No. 1 at 34-50.) Notably, in its Termination Notice, HBS cites to and attaches a single agreement—a Master Agreement, dated December 1, 2021 (the **"Florida Agreement"**). HBS stated that its "correspondence shall serve as [HBS's] formal termination of the Agreement" pursuant to "section 6.4 of the Agreement." (*Id.*) Further, HBS demanded payment of the alleged outstanding "Statement" attached to its Termination Notice listing twenty-seven (27) invoices totaling $7,892,252.00, noting that Insight's failure would leave it with "no choice but to . . . file a lawsuit." (*Id.*)

**B.  Plaintiff Elected to File Its Claim in State Court, Actively Litigating That Claim.**

On September 26, 2025, HBS filed its Complaint in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, bearing case number CACE-25-014728 (the **"State Court Action"**). HBS served Insight with the Summons and Complaint on October 6, 2025. In its Complaint, HBS asserted claims against Insight for breach of contract (Count I) and accounts stated (Count II) based on the Florida Agreement, attached there as its Exhibit 1. (Dkt. No. 1, at Compl.) HBS alleged Insight breached the Florida Agreement by failing to pay the particular invoices HBS issued for its "services" between June 30, 2023 and August 31, 2025, and that HBS provided written notice to Insight that it was terminating the Florida Agreement due to its failure to pay those invoices. (*Id.* at Compl. ¶¶ 9,11.) Insight availed itself of Florida law under that contract's choice of law provision. (*Id.* at Compl. ¶¶ 1, 4.) HBS further alleged the state court had "jurisdiction pursuant to Chapter 26, Florida Statutes and § 9.7 of the [Florida] Agreement," and that "[v]enue is proper in this Court pursuant to § 9.7 of the Agreement." (*Id.* at Compl. ¶¶ 1, 4.)

In addition to filing its Complaint, Plaintiff also served discovery on Insight. HBS served Insight with its First Request for Production, its First Set of Interrogatories, and its First Request

for Admissions, and it served its Initial Discovery Disclosures pursuant to Florida Rule of Civil Procedure 1.280. Plaintiff's discovery requests and its Initial Disclosures referenced only the Florida Agreement and the Statement itemizing the allegedly outstanding invoices totaling $7,892,252.00. In fact, HBS's interrogatories were patently inconsistent with the later-invoked Tennessee contract's prohibition on interrogatories. (*Compare* Dkt. No. 16-1 at 11, § 11.3.2.)

On October 28, 2025, HBS moved for entry of a Clerk's default in the State Court Action. A Clerk's Default was entered on November 3, 2025.

**C. Insight's Removal to this Court and Plaintiff's Participation in Rule 16 Conferences.**

Relying upon HBS's Complaint and longer, related course of conduct under the Florida Agreement, Insight timely filed its Notice of Removal on November 4, 2025 under 28 U.S.C. § 1446(b)(1), within 30 days after receiving service of the Complaint. Insight responded to the Complaint in accordance with Rule 81(c)(2)(c), filing an Answer, Affirmative Defenses, and Counterclaim on November 26, 2025 under an unopposed 14-day extension. (*See* Dkt. No. 11.)

On December 1, 2025, this Court entered an Order Requiring Scheduling Report, to be filed jointly by the parties by December 22, 2025, pursuant to Local Rule 16.1. To that end, the parties held three conferences over the course of two weeks related to the joint scheduling report and discovery plan. (*See* Dkt. No. 18.) Although HBS initially said it would stipulate to vacate the state court's procedural default, it refused to respond to a draft-stipulation for the past week after it invoked arbitration, thus further necessitating a motion from Insight to settle the issue.

**D. HBS Reverses Course and Seeks Arbitration.**

HBS did not mention the existence of another agreement until December 9, 2025, during its second discovery conference, after which it shared a "Master Services Agreement" dated December 1, 2021, with Insight's counsel (the **"Tennessee Agreement"**). The Tennessee

Agreement contains a variety of provisions that conflict with the Florida Agreement, as well as new and different provisions. For example, it contains conflicting dispute resolution procedures, a new arbitration provision requiring arbitration to take place in Nashville, Tennessee, and a conflicting provision that Tennessee law governs the parties' disputes. (*See* Dkt. No. 16-1 §§ 11, 13.2.) After the parties conferred a third time and exchanged several emails, HBS terminated the conferences and filed a new arbitration proceeding on December 16, 2025 with the AAA, which concerns the same invoices as the current case. (*See* Exh. A & Dkt. No. 16 at 2 n.2.) On December 17, 2025, HBS filed its Motion to Compel Arbitration. (Dkt. No. 16.)

### III.   PROCEDURAL STANDARD

This Motion invokes the ample and flexible powers of the All Writs Act, under which the Court "may issue all writs necessary or appropriate in aid of [its] respective jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C.S. § 1651(a). In all respects here, the Court has broad discretion, subject to a deferential standard of appellate review.

The federal courts generally have considerable discretion when considering requests for injunctive relief. *See United States v. Tsarnaev*, 595 U.S. 302, 323, 142 S. Ct. 1024 (2022); *Benisek v. Lamone*, 585 U.S. 155, 160, 138 S. Ct. 1942 (2018). The Court also has abundant discretion to decide motions seeking a writ under the All Writs Act. *See Grigsby & Assocs. v. M Sec. Inv.*, 664 F.3d 1350, 1352 (11th Cir. 2011) ("*Grigsby I*"); *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285 (11th Cir. 2007). As a practical matter, that latter discretion is effectively wider since "the requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction . . . is grounded in entirely separate concerns." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir.

2004). The *Klay* court explains the various general aspects of the abuse of discretion standard that apply in cases involving the All Writs Act. *Klay*, 376 F.3d at 1096-97.

## IV.   ARGUMENT AND MEMORANDUM OF LAW

The key issue for this Motion is whether one or more injunctive writs should issue under the All Writs Act, 28 U.S.C. § 1651, effectively staying the arbitration pending the Court's resolution of the parties' substantive issues relating to arbitration, such as waiver-by-conduct, estoppel, claim-splitting, and forum-shopping. As a result, much of the substantive legal discussion is better suited to Insight's impending oppositions to HBS's motions to compel and for a post-counterclaim, voluntary dismissal. But, because HBS recently filed a competing arbitration on the same claim creating conflicting deadlines and obligations, this Memorandum will add a sufficient discussion of some substantive arguments to reflect the practical, merit-based usefulness of the Court's entry of an expedited injunction—beyond the simple fact that controlling precedent requires it.

### A. Despite Broad Discretion, It Would Be Error for the Court to Fail to Enjoin Arbitration, Pending Its Decision on Substantive Issues Including Waiver.

Insight contends that HBS waived the arbitrability of its claim by engaging in conduct inconsistent with the arbitration provision. As set forth in the parties' allegations and proffered for hearing, its actions include:

- HBS's years of pre-litigation negotiations based upon the Florida Agreement;

- HBS's failure throughout these pre-litigation years to cite or pursue the pre-arbitration procedures set forth in the Tennessee Agreement, and instead actively choosing the *conflicting* dispute-resolution procedures of the Florida Agreement;

- HBS's pre-litigation letter threatening a lawsuit (not a costly and inconvenient arbitration) based on the Florida Agreement (Pl.'s Compl. Exh. 1 in Dkt. No. 1);

- HBS's choice to articulate its claim (i.e., the nucleus of facts) in relation to the Florida Agreement, rather than either of the newly cited, conflicting agreements (Pl.'s Compl. & Exhs.);

- HBS's filing of the State Court Action to assert its claim (Pl.'s Compl.);

- HBS's propounding of discovery requests in the State Court Action, including interrogatories that are specifically *barred* by the Tennessee Agreement's arbitration provisions (*see* Dkt. No. 1);

- HBS's issuance of initial disclosures in the State Court Action, pursuant to Fla. R. Civ. P. 1.280 (*id.*);

- HBS's filing of a motion for a default in the State Court Action (*id.*);

- HBS's now-continuing refusal to vacate the default in the State Court Action; and

- HBS's participation in discovery conferences, until it came across its arbitration theory having gotten cold feet about federal court (*see* Dkt. Nos. 17 & 18).

The factual basis of the argument stems almost entirely from the Court's own record.

As for the legal requirement to enjoin arbitration pending this Court's review of key issues such as HBS's waiver-by-conduct, *Grigsby I*, 664 F.3d 1350, controls this case. The *Grigsby I* court reached a clear, decisive holding: "it is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate." *Id.* at 1353. To overcome that presumption, there must be a "clear and unmistakable" delegation of the authority to decide the waiver-by-conduct issue. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-69, 139 S. Ct. 524, 529-30 (2019). Interpreting an arbitration provision generally requires the Court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). Under those principles, no such language exists in § 11 of the Tennessee Contract. *Grigsby I* held that it is reversible error in such circumstances to fail to enjoin arbitration until the court can resolve the waiver issue. Indeed, the Supreme Court more recently held that if arbitration-related provisions in two potentially governing contracts conflict, and those contracts further conflict as to who

should decide the issue (e.g., arbitrability), then that matter is for the courts, not a private arbitrator, to decide. *Coinbase, Inc. v. Suski*, 602 U.S. 143, __, 144 S. Ct. 1186, __ (2024) As a corollary, "before [the conflicting provisions such as a] forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls." *Id.* at 145.

**B. There Will Be Meritorious Grounds to Argue That Plaintiff Waived its Right to Arbitration by Actively Litigating its Claims and Taking Other Actions Inconsistent with its Right to Arbitrate.**

HBS waived its right to arbitrate by taking pre-litigation actions inconsistent with its arbitration rights, filing its lawsuit in state court, serving discovery that directly conflicts with limitations in the arbitration provisions, and then litigating its claims under the contract it attached to its Complaint. HBS's affirmative actions in pursuit of its claim are inconsistent with asserting a right to arbitrate. Importantly, Insight specifically relied upon HBS's Complaint and its Florida Agreement when choosing to remove this action from state court to this Court, since Florida has bright-line rules that would conclusively find a waiver based upon HBS's act of filing a lawsuit alone. *See, e.g.*, *Soloman Law Group, P.A. v. Dovenmuehle Mortgage, Inc.*, 332 So. 3d 56, 59 (Fla. 2d DCA 2021) ("[I]t is well settled that a party who files a lawsuit based on a contract waives the right to enforce an arbitration provision in that contract."); *King's Acad., Inc. v. Caliendo*, 418 So. 3d 643 (Fla. 4th DCA 2025) (defendant's answer in a forum that it did not initiate, rather than the *plaintiff's* complaint in its chosen forum, was enough to decide the issue against that defendant). Some authority exists, however, that the federal court should still apply the Florida law of waiver to decide the issue. *E.g.*, *Ferguson v. Budget Rent A Car Sys.*, No. 6:23-cv-633-PGB-EJK, 2024 U.S. Dist. LEXIS 107969, at *14 (M.D. Fla. June 18, 2024). That approach is especially fair where, as here, the party invoking the arbitration clause also drafted the choice-of-law provision.

The Eleventh Circuit recognizes that an agreement to arbitrate, like any other contractual right or obligation, may be waived. *Warrington v. Rocky Patel Premium Cigars, Inc.*, No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) (holding that filing of previous litigations, despite their being in early stages, waived arbitration). "[T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." *Warrington*, 2023 WL 1818920, at *2 (quotations and citations omitted). "Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey ***smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime***." *Id.* (quotations and citations omitted) (emphasis added).

Even for defendants like Insight who are haled unwillingly into court, a waiver can still occur upon "the intentional relinquishment or abandonment of a known right," and the waiver analysis "focuses on the actions of the person who held the right." *Morgan*, 596 U.S. at 417, 142 S. Ct. at 1713. In federal court, "[a] party has waived its right to arbitrate if, under the totality of the circumstances, ***the party has acted inconsistently with the arbitration right***...." *Warrington*, 2023 WL 1818920, at *2 (quotations and citations omitted) (emphasis added); *see Poindexter v. Nelnet, Inc.*, 2025 WL 2709937, at *3 (M.D. Fla. Aug. 13, 2025) (same).[2]

Before the Supreme Court's 2022 decision in *Morgan*, that test was palpably more lenient and *required* a showing of prejudice, including in the older cases upon which HBS's motion to compel relies. These notably include "*Grigsby II*," i.e., *Grigsby & Assocs. v. M Sec. Inv.*, 635 Fed. Appx. 728 (11th Cir. 2015). But the Supreme Court in *Morgan* superseded the Eleventh Circuit's

---

[2] *See also Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1369 (11th Cir. 2023) (citation omitted) (in motions to stay litigation, "To determine whether a party has defaulted for Section 3 purposes [of the FAA], a court must 'decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right.'").

two-part test for evaluating waiver of arbitration[3] and thereby "abrogated much—perhaps most—of the Eleventh Circuit's precedent on waiver of arbitration agreements," in a way that makes waiver easier to show now. *Gaudreau v. My Pillow, Inc.*, 2022 WL 3098950, at *6 (M.D. Fla. Jul. 1, 2022). Arbitration agreements are on par with other contracts, but they are not specially privileged. *Morgan*, 596 U.S. at 418, 142 S. Ct. at 1713, *cited in Gaudreau*, at *6. And while legal prejudice exists here, it only adds to the analysis, but is not required by it.

*Waiver by Invoking the Judicial Process.* Even before *Morgan*, the Eleventh Circuit held that a *defendant* still waives it right to arbitration where it invokes the judicial process. *See, e.g.*, *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1203 (11th Cir. 2011) ("The invocation of the judicial process ordinarily establishes a waiver of the defendant's right to compel arbitration—i.e., such conduct shows, in the normal case, that the defendant intends to elect a judicial forum rather than an arbitral tribunal.").[4] As to waivers by such *responding* parties, the Eleventh Circuit approved the rationale of the Seventh Circuit in *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (Posner, J.). As in *Grigsby I*, the *Cabinetree* court held "that an election to proceed before a nonarbitral tribunal for the resolution of a contractual

---

[3] The "Eleventh Circuit formulated the standard of "substantial participation" by applying the "policy favoring arbitration," the approach the Supreme Court expressly disapproved" in *Morgan*. *Warrington*, 2023 WL 1818920, at *2. Courts in the Eleventh Circuit "do not apply a 'substantial participation' standard for other contractual rights that may be waived by participation in litigation." *Id.* Under *Morgan*, such a heightened standard for considering waiver appears to be impermissible. Courts may only "place [arbitration] agreements upon the same footing as other contracts," including with regard to waiver. *Morgan*, 596 U.S. at 412-14 (holding federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration' ").

[4] *See also Soriano v. Experian Info. Sols., Inc.*, No. 2:22-CV-197-SPC-KCD, 2022 WL 17551786, at *2-3 (M.D. Fla. Dec. 9, 2022) (defendant waived arbitration after pursuing litigation for four months that included, among other things, filing an answer, an amended answer, and exchange of discovery); *Gaudreau*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *8 (finding waiver after defendant removed case to federal court and answered two complaints without referencing its right to arbitrate).

dispute is a presumptive waiver of the right to arbitrate." *Id.* It concluded a defendant had waived arbitration by removing the case to federal court and participating in discovery.

Judge Posner eloquently set forth the point of this sensible doctrine and its application:

> An arbitration clause gives either party the choice of an alternative, nonjudicial forum in which to seek a resolution of a dispute arising out of the contract. But the intention behind such clauses, and the reason for judicial enforcement of them, *are not to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums*. *Cabinetree, which initiated this litigation, could, instead of filing suit in a Wisconsin state court, have demanded arbitration under the contract. It did not, thus signifying its election not to submit its dispute with Kraftmaid to arbitration.* Kraftmaid if it wanted arbitration could have moved for a stay of Cabinetree's suit in the Wisconsin state court. It did not. Instead it removed the case to federal district court. *By doing so without at the same time asking the district court for an order to arbitrate, it manifested an intention to resolve the dispute through the processes of the federal court.* To resolve the dispute thus is not to resolve it through the processes of the American Arbitration Association.

*Id.* (emphasis added).

That fundamental point is even starker, more poignant and more justly applied to a plaintiff, like HBS, who has plenty of time for reflection under the statute of limitations, has abundant information in its pre-suit investigation, and yet chooses to rely on pre-litigation processes that conflict with the arbitration provision, chooses to file suit in its home state against a foreign defendant, and chooses to participate in some discovery—let alone discovery explicitly barred by its own arbitration provision. Such a plaintiff acts inconsistently with a right to arbitrate.

Courts are especially wary of these exceptionally rare *plaintiffs* who file litigation and then seek to arbitrate the same claim. For examples in the Eleventh Circuit, *see Warrington*, No. 22-12575, 2023 WL 1818920 (11th Cir.) (plaintiff waived right to arbitrate by filing suit in state court to enforce contractual rights and moving to dismiss, remand, abate or stay a federal action, all before seeking to compel arbitration); *Poindexter*, 2025 WL 2709937, at *3-4  (M.D. Fla.) (plaintiff waived right to arbitration by filing "a lawsuit in Small Claims Court and serving the lawsuit on the defendant"); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514

(11th Cir. 1990) (plaintiff acted inconsistently with arbitration by filing complaint and engaging in motion practice and discovery), *superseded on other grounds by Morgan*, 596 U.S. 411. Even before *Morgan*, courts rejected such conduct and found it prejudicial earlier in the case. *E.g.*, *Ferrari v. D R Horton, Inc.*, No. 14-cv-01941-LSC, 2015 WL 1091339 (N.D. Ala. Feb. 20, 2015) (finding prejudice and waiver where plaintiff "waited almost four months after filing his claim to move to compel arbitration"; defendant "went through the litigation expenses involved in filing an answer and compulsory counter-claims . . . , meeting with [plaintiff] and filling a report of the parties planning meeting pursuant to Fed. R. Civ. P. 26(f), and filing and fully briefing a motion to dismiss.").[5] Here, in light of these well developed, fact-based issues of waiver-by-conduct that require the Court's review, an injunctive writ should enter under the All Writs Act, suspending the AAA arbitration until such time as the Court can orderly decide the motion to compel and its related issues of waiver.

## C. There Will Be Meritorious Grounds to Argue That Various Estoppel-Based Doctrines Preclude Plaintiff From Arbitrating This Claim.

For a variety of reasons, this Court will properly consider a suite of estoppel doctrines in deciding the substantive issues in this case. Estoppel is even more centrally a judicial (not arbitral) doctrine than waiver when it comes to fundamental arbitrability, because estoppel overlaps more fully with questions of honesty and consistency in protecting the Court's jurisdiction from 'mockery.' For reasons like those expressed in *Grigsby I* (as to why waiver-by-conduct, unlike the

---

[5] Other Circuits reached similar conclusions about such unusual turnabout-plaintiffs. *See, e.g.*, *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908-09 (5th Cir. 2009) (plaintiff's "decision to file suit on her otherwise arbitrable claims constitutes substantial invocation of the judicial process as to those claims."); *Sabatelli v. Baylor Scott & White Health*, 832 F. App'x 843, 848 (5th Cir. 2020) ("when the plaintiff is the reason there is a lawsuit in the first place, the first requirement for implied waiver will generally be satisfied"); *Lemir Associates v. Howmet Aerospace, Inc.*, 2024 WL 3024878, at *5-6 (D.N.J. Jun. 17, 2024) (plaintiff waived arbitration after filing lawsuit in state court but seeking arbitration after defendant removed and moved to dismiss).

ordinary, arbitrable issue of contractual waiver, is an issue for the judge not the arbitrator), issues of estoppel go to arbitrability when they touch upon whether HBS can jointly invoke this new agreement to seek relief in a new forum. Absent contractual delegations not present here, these are judicial issues. Saving lengthier discussion for the substantive motions, this request outlines why familiar estoppel considerations reinforce a finding of waiver.

In terms of the factual basis for its various estoppel arguments, Insight will develop four basic points, suggested above. ***First***, until December 9, 2025, all of HBS's prior positions on these same invoices apparently and substantively were based upon the Florida Agreement, culminating in its Complaint. The Florida Agreement does not contain any arbitration provision and instead has a procedure that conflicts with the Tennessee Agreement's arbitration clauses. Yet, the Tennessee Agreement's umbrella terms and conditions facially purport to relate and apply just as much to the Florida Agreement as they do to the newly proposed 'insurance' contract attached as Plaintiff's Motion-Exhibit 2. *In other words*, when choosing the Florida Agreement's dispute resolution provisions and a lawsuit, HBS was specifically disavowing the conflicting Tennessee provisions. Moreover, that Florida Agreement also advantaged HBS by providing for venue and choice of law in Broward County, Florida, to which it availed itself. ***Second***, after initiating litigation, HBS served Initial Disclosures invoking Florida law and rules of procedure, focused solely on the Florida Agreement and ignoring the existence of the Tennessee Agreement. ***Third***, HBS served multiple discovery requests concerning the Florida Agreement, including interrogatories specifically barred by the Tennessee Agreement and obviously inconsistent with it. *See Miller Brewing Co. v. Forth Worth Distributing Co. Inc.*, 781 F.2d 494, 498 (5th Cir. 1986) ("A party to arbitration does not have a right to the pre-trial discovery procedures that are used in a case at law. A party may not invoke arbitration and yet seek pre-trial discovery going to the

merits.") (quotations and citations omitted), *superseded on other grounds by Morgan*, 596 U.S. 411. ***Fourth***, HBS moved for and obtained a Clerk's Default on its Complaint. Thus, at every turn, HBS clearly evinced its strategic intent to pursue its claim in a judicial forum under the Florida Agreement, rather than to seek arbitration of that claim under the Tennessee Agreement. A ***fifth*** factual consideration, moreover, arises because HBS has now filed a competing arbitration based on the same invoices and the same conduct by the parties' alleging the same entitlement to payment—i.e., the same nucleus of facts—but under a different contract.

Given that Plaintiff HBS overwhelmingly relied on the Florida Agreement, the question now is whether and how HBS should be allowed to fundamentally alter that position after all the parties and the courts have relied upon it. In opposing HBS's substantive motions, Insight will elaborate and apply doctrines of equitable and judicial estoppel. In this request for an injunctive writ to stay arbitration pending this Court's substantive resolutions, it suffices to summarize their application, and then to focus more on a doctrine particularly appropriate for this Court's protection of its jurisdiction under the All Writs Act; namely, the doctrine of claim-splitting.

***Equitable Estoppel.*** As one Florida court summarized, "[e]quitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position[.]" *Bueno v. Workman*, 20 So. 3d 993, 997 (Fla. 4th DCA 2009). To establish it, a party shows "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *Id.* at 997 (quotations and citations omitted). *See Head v. Lane*, 495 So. 2d 821, 824 (Fla. 4th DCA 1986) (same). Florida courts, for example, have found the doctrine of estoppel to apply in many contexts:

> It has been observed that the occasions for fashioning a remedy under the label of estoppel in order to prevent injustice are too numerous to count. ***The essence of the***

> ***doctrine, however, is that a person should not be permitted to unfairly assert,
> assume or maintain inconsistent positions.*** This principle is contained in the
> various applications of the doctrine.

*Id.* (internal citation and quotation omitted).[6]

*Judicial Estoppel.* "Judicial estoppel provides that [o]ne who assumes a particular position or theory in a case is judicially estopped in a later phase of that same case, or in another case, from asserting any other or inconsistent position toward the same parties and subject matter." *Dora v. Morrison as Co-Trustee of Mary Rose and Douglas Morrison Family Trust, U/A/D 10/05/2007¸* 384 So.3d 290, 294 (Fla. 5th DCA 2024) (quotations and citations omitted). Parties cannot avail themselves of a contractual position when it benefits them only to dispel the position when it does not. *See Gaudreau*, No. 6:21-cv-1899-CEM-DAB, at \*8 (M.D. Fla.) (citing *American Nat'l Bank v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983); *Bergeron Env. & Recycling, LLC v. LGL Recycling, LLC*, 398 So. 3d 988, 994-95 (same). "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank v. FDIC*, 710 F.2d at 1536; *see Anfriany v. Deutsche Bank Nat'l Tr. Co. for Registered Holders of Argent Sec., Inc., Asset-Backed Pass-Through Certifs., Series 2005-W4*, 232 So. 3d 425, 427 (Fla. 4th DCA 2017) (quoting *Grau v. Provident Life & Accident Ins. Co.*, 899 So. 2d 396, 400 (Fla. 4th DCA 2005)) (same). A change in position invites mockery and causes prejudice "when 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

---

[6] Here, the unfair disadvantages to HBS not only included choices of law, potential differences in waiver rules, undue surprise (having not previously invoked it), and Insight's expenditure of significant time and fees, but also the Tennessee Agreement's 4-month trial track and facial prohibition on depositions and interrogatories in this complex fraud matter that spans roughly 4.5 years. Such a track cannot provide a meaningful hearing of Insight's Counterclaim, **especially given the reasons why *both* parties expressly deemed this case a "Complex Track" case under Local Rules.** (*See* Dkt. No. 18.)

the opposing party if not estopped." *Whittingham v. HSBC Bank USA, NA as Tr. for Holders of Deutsche Alt-A Sec. Mortg. Loan Tr.*, *Series 2007-OA1*, 275 So. 3d 850, 853 (Fla. 5th DCA 2019).

The doctrine applies to positions taken in "quasi-judicial proceedings." *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001). And courts have precluded parties from asserting inconsistent, conflicting positions in the same or separate proceedings. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (finding "New Hampshire is equitably barred from asserting—contrary to its position in the 1970's litigation—that the inland Piscataqua River boundary runs along the Maine shore").[7]

*Claim Splitting.* Perhaps the most poignant of the equitable doctrines sounding in estoppel is "claim splitting," in support of the Court's protection of federal jurisdiction through the All Writs Act. Claim splitting is similar to doctrines of res judicata and collateral estoppel, except that it applies when the first matter is still pending. From the Southern District to the Supreme Court, federal courts have long enforced the doctrine. It's not hard to find, and it's even easier to intuit on the gut-level of a straightforward, non-vexatious, non-manipulative litigant. The Eleventh Circuit discussed it at length in *Vanover v. NCO Fin. Servs.*, 857 F.3d 833, 840-42 (11th Cir. 2017). In *Greene v. H&R Block E. Enters.*, 727 F. Supp. 2d 1363 (S.D. Fla. 2010), this Court more succinctly summarized it when dismissing a suit that duplicated pending litigation, stating:

> It is well settled that a plaintiff "may not file duplicative complaints in order to expand their legal rights." *Curtis v. Citibank*, 226 F.3d 133, 140 (2d Cir. 2000). Such a policy ensures that a plaintiff may not "split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." ***Stark v. Starr*, 94 U.S. 477, 485, 24 L. Ed. 276 (*1876*).** The effect of this restriction is twofold: to ensure fairness to litigants and to conserve judicial resources. . . . [A] district court

---

[7] *See also Geery v. Ethicon, Inc.*, Case No. 6:20-cv-1975-RBD-LRH, 2021 WL 12095038, at *6-7 (M.D. Fla. Aug. 13, 2021) (defendants would "not be permitted to change course to gain an unfair advantage," since they took an inconsistent position in different proceedings to successfully argue that New Jersey law applied, but later invoked Florida law to avoid punitive damages).

has authority as part of its inherent power over its docket administration to stay or dismiss a suit that is duplicative of another case then pending in federal court. ***To determine whether such duplicative claim-splitting has occurred, courts borrow from the doctrine of claim preclusion and permit the later-filed suit to be dismissed if it 1) involves the same parties or their privies; and 2) arises out of the same transaction or series of transactions as the first suit.***

*Id.* at 1367 (internal citations omitted; emphases added). The All Writs Act gives this Court expansive authority to enforce the same rules against a conflicting arbitration, to preserve the Court's jurisdiction and avoid mockery. *See Grigsby I, supra.* It could even have addressed the issue through a common motion to dismiss, if HBS had filed its arbitration in September 2025 along with its Complaint, rather than waiting until last week, after a Counterclaim. *See Greene*, 727 F. Supp. 2d at 1367 (dismissal motion); *Vanover*, 857 F.3d at 836 (Rule 12(b)(6) motion).

In these preclusion doctrines, a "claim" is not some particular count or the litigant's artful dodge in phrasing it. Of course, even the few litigants who are brazen enough to split claims try to artfully distinguish them 'in the weeds,' but to no avail. Instead, a "claim" is a common "nucleus of operative facts." *Vanover*, 857 F.3d at 842. It doesn't matter if the plaintiff cites different contracts or statutes. *Id.* at 843. Otherwise, vexatious plaintiffs could file five complaints in five forums, each presenting one of five counts, then choosing the forum it found most favorable. Instead, different pleadings assert the same claim "when they arise out of the same [basic factual] transaction or series of transactions." *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002) (res judicata barred plaintiff's second suit, where additional policies existed during period of first suit). And, "plaintiff['s] fail[ure] to investigate its claims" and to discover and cite other then-existing contracts "in a timely manner in order to present them in the first" lawsuit will not allow a plaintiff, such as HBS, to later split the claim. *Id.* at 1272.

Here, could HBS have plausibly and fairly asserted alternative claims against Insight in one forum under two contracts? Maybe or maybe not—it might have been required to choose and

elect its remedies in relation to the Tennessee Agreement. But, what is certain for these injunctive purposes and under this doctrine is that HBS *could not* contemporaneously run to two different forums to litigate the same invoices and the same services—whether under contract or tort—hoping to avail itself of whichever forum treated it more favorably.

For purposes of claim splitting, this case presents an important and subtle detail about the relationship between the contracts and Plaintiff's election of them. The Tennessee Agreement is a set of "Master" umbrella terms and conditions that facially purport to relate and apply to all the parties' service agreements—i.e., just as much to the Florida Agreement as to the newly proposed 'insurance' contract. *But* that also means, for claim splitting, res judicata and collateral estoppel, that HBS was required to bring *all* the disputes that factually involve the *Tennessee* Agreement and this series of invoices and interactions in *one* forum. *See, e.g.*, *Trustmark Ins. Co.*, 299 F.3d at 1270 ("A series of breaches of the same contract, all occurring before filing suit, should be brought in that suit."). The mere fact that HBS chose to apply the arguably subservient Florida provisions instead of the dominant Tennessee ones doesn't change that HBS was entitled to choose one forum and one forum only. Instead, it magnifies why HBS should be held to its choice, rather than allowed to shop for another with buyer's remorse.

For all these reasons, Insight respectfully asks the Court to protect its jurisdiction through an expedited injunctive writ by December 29, 2025, under the All Writs Act prohibiting further proceedings on HBS's December 16, 2025 Arbitration until this Court can decide the merits of these substantive issues, including HBS's pending motion to compel.

Dated: December 24, 2025

/s/ George S. LeMieux
George S. LeMieux, Esq.
Florida Bar No. 16403

**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: 954-468-1383

George S. LeMieux, Esq.
Florida Bar No. 16403
glemieux@gunster.com
eservice@gunster.com
mzayas@gunster.com
Lauren A. Marcil
Florida Bar No.: 1002832
lshumate@gunster.com

CLANCY ADVISORS, PLC
Saura J. Sahu (pro hac vice)
2723 S. State Street, Suite 150
Ann Arbor MI 48104
Telephone: 734-780-7595
sahu@clancyadvisors.com
www.clancyadvisors.com

*Attorneys for Defendant, Insight Chicago, Inc.*

## CERTIFICATE OF SERVICE

I certify that on December 24, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ George S. LeMieux
George S. LeMieux, Esq.

20