UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-cv-62231-AHS

| | |
|---|---|
| HEALTH BUSINESS SOLUTIONS, LLC, a Florida limited liability company<br>Plaintiff,<br>v.<br><br>INSIGHT CHICAGO, INC., a Foreign Profit Corporation,<br>Defendant. | Removed From: 17th Judicial Circuit in and for Broward County, Florida, Case No.: CACE-25-014728 |

**DEFENDANT/COUNTER-PLAINTIFF, INSIGHT CHICAGO INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT, HEALTH BUSINESS SOLUTIONS, LLC'S MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

Defendant/Counter-Plaintiff, Insight Chicago, Inc. ("Insight"), opposes Plaintiff/Counter-Defendant, Health Business Solutions, LLC's ("HBS") Motion for Voluntary Dismissal Without Prejudice ("Motion").

### I.   INTRODUCTION

HBS wants a "do-over." HBS seeks to deprive this court of jurisdiction to avoid litigating in a federal forum after Insight properly removed this case to federal court and filed its Counterclaim. That is, following several months of litigation which it initiated, HBS requests that the parties re-start this litigation in a different forum—namely, arbitration—after it strategically chose to sue Insight in Florida state court for the alleged nonpayment of invoices under a Master Agreement (the "Florida Agreement") attached as Exhibit 1 to its Complaint. Now, HBS presents another Master Services Agreement with conflicting terms (the "Tennessee Agreement"), and has

1

filed an arbitration under that agreement relating to the exact same invoices for which it already sued in court. Having filed a competing arbitration on the same claim, HBS has moved to compel arbitration, and moves to voluntarily dismiss its claim pending before this Court.

HBS's Motion should be denied because Insight will suffer clear legal prejudice if HBS is permitted to voluntarily dismiss its claim for at least four reasons. *First*, Insight will lose its substantial right of removal to federal court, and its right to remain in federal court. *Second*, Insight will be forced to defend against HBS's same claim in arbitration after HBS waived the arbitrability of its claim by filing a lawsuit, seeking discovery and seeking a default—conduct inconsistent with its right to arbitrate. *Third*, Insight will suffer additional legal prejudice by now being forced to proceed under the conflicting terms of the Tennessee Agreement, which contains conflicting dispute resolution procedures, an arbitration provision requiring arbitration to be held in Nashville, Tennessee, and a conflicting choice of law provision, which dictates that Tennessee law governs the parties' disputes. Insight will also be prejudiced by having expended substantial time, effort, and financial resources defending this action in a judicial forum, only to have to start anew in arbitration. *Fourth*, because Insight's Counterclaim must remain pending before this Court while HBS attempts to litigate its substantially interrelated claim in an alternative forum, Insight faces the risk of inconsistent verdicts and duplicative litigation—in addition to concerns about judicial economy.

Alternatively, if the Court permits HBS to dismiss its claims, it should impose conditions, including requiring HBS to pay Insights' attorneys' fees and costs. Additionally, if the Court is inclined to grant HBS's Motion, Insight's Counterclaim should remain pending for independent adjudication based upon federal diversity jurisdiction.

2

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Insight will not repeat the lengthy factual and procedural background that led to the present circumstances, which are fully set forth in Insight's Motion to Enjoin Arbitration and Opposition to HBS's Motion to Compel Arbitration, and which Insight incorporates here. However, Insight will briefly summarize the relevant facts for purposes of this Opposition.

The parties have longstanding billing disputes dating back to the beginning of their relationship in 2021. Insight operates a hospital in Chicago, Illinois, and HBS is the only billing contractor for the hospital. After unsuccessful attempts at resolving the billing disputes, HBS notified Insight that it was terminating their relationship pursuant to the terms of the Florida Agreement based upon Insight's alleged failure to pay certain invoices listed in a statement of account attached to the termination notice. Thereafter, HBS chose to file its Complaint in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, bearing case number CACE-25-014728 (the "State Court Action"), and actively litigated that claim, including serving discovery and moving for a Clerk's default.

Insight timely filed its Notice of Removal on November 4, 2025, under 28 U.S.C. § 1446(b)(1), within 30 days after receiving service of the Complaint. Insight responded to the Complaint in accordance with Rule 81(c)(2)(c), filing an Answer, Affirmative Defenses, and Counterclaim on November 26, 2025, under an unopposed 14-day extension. (*See* D.E. 11.) Pursuant to this Court's Order Requiring Scheduling Report, the parties held three conferences over the course of two weeks related to the joint scheduling report and discovery plan.

HBS never mentioned the existence of any other agreement until December 9, 2025, during its second discovery conference, after which it shared the Tennessee Agreement. The Tennessee Agreement contains conflicting dispute resolution procedures, an arbitration provision requiring

3

arbitration to be held in Nashville, Tennessee, and a conflicting choice of law provision, dictating that Tennessee law governs the parties' disputes. After the parties conferred a third time and exchanged several emails, HBS terminated the conferences and filed a new arbitration proceeding on December 16, 2025, with the American Arbitration Association, which concerns the same invoices as the current case. Additionally, HBS filed a Motion to Compel Arbitration, along with the present Motion to voluntarily dismiss its claims. Because Insight contends HBS waived its right to arbitrate, and because Insight would be prejudiced by HBS's dismissal of its claims, Insight refused to stipulate to HBS's proposed voluntary dismissal.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 41(a) governs HBS's request to voluntarily dismiss its claims against Insight. Under Rule 41(a)(2), once a defendant has answered, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Additionally, "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." *Id.*  When exercising its discretion under Rule 41(a)(2), the court must "weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *Id.*

The Eleventh Circuit has repeatedly instructed that "[t]he purpose of the rule is ***primarily to prevent voluntary dismissals*** which ***unfairly affect the other side***, and to permit the imposition of curative conditions." *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856 (11th Cir. 1986) (quotation and citation omitted) (emphasis added). Thus, when considering a motion for voluntary dismissal the court "should bear in mind ***principally the interests of the defendant***, for it is the

***defendant's position that the court should protect***." *Id.* (Emphasis added). Although the Eleventh Circuit has said "a dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit*, as a result," *McCants*, 781 F.2d at 856–57 (emphasis in original), "[a] plaintiff ***enjoys no right*** to a voluntary dismissal without prejudice." *McBride v. JLG Indus., Inc.*, 189 Fed. Appx. 876, 878 (11th Cir. 2006) (emphasis added); *Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502, 1502 (11th Cir. 1991) ("[a] voluntary dismissal without prejudice is not a matter of right.").

"[G]ranting voluntary dismissal pursuant to Rule 41(a)(2) may be inappropriate where the defendant will suffer clear legal prejudice." *Carlsen v. Florida Health Sciences Center, Inc.*, Case No. 8:23-cv-559-WFJ-JSS, 2023 WL 3057416, at *3 (M.D. Fla. Apr. 24, 2023). Thus, "[a]lthough the prospect of a subsequent lawsuit does not qualify as clear legal prejudice, the loss of a 'substantial right' does." *Id. See also Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014) (finding that voluntary dismissal "may be inappropriate" where it would "cause the defendant to lose a 'substantial right,'" or where "the plaintiff's counsel has acted in bad faith").

## IV.  ARGUMENT AND MEMORANDUM OF LAW

**A. Voluntary Dismissal is Inappropriate Because Insight will Lose Substantial Rights and Suffer Clear Legal Prejudice.**

HBS' Motion should be denied. A voluntary dismissal is not appropriate where, as here, a defendant (like Insight) suffers clear legal prejudice and the loss of a substantial right. Insight will lose its substantive right of removal to federal court. Additionally, it will suffer clear legal prejudice in defending against the same claims in arbitration that HBS previously waived, and litigating under conflicting provisions of the Tennessee Agreement that HBS previously ignored. Further, because Insight's Counterclaim must remain pending while HBS attempts to litigate its claim in an alternate forum, Insight risks inconsistent verdicts and duplicative litigation.

5

### 1. *Insight will irrevocably lose its right of removal to federal court.*

If HBS is permitted to voluntarily dismiss its claims, Insight will lose its substantial rights under 28 U.S.C. §§ 1332(a)(1) and 1441(a) to remove this case to federal court, and to remain in federal court. HBS haled Insight unwillingly into a Florida state court, and, in reliance upon HBS's allegations under the Florida Agreement, Insight exercised its substantive right to remove this case to federal court.

The Eleventh Circuit has not addressed this exact issue. However, although "the Eleventh Circuit has declined to weigh in on the substantiality of a defendant's right of removal in CAFA cases versus non-CAFA cases, . . . [it] has nevertheless indicated that where the removability of [a] case is based on the substance of the action[,] a defendant's right to removal may be substantial. *Carlsen*, 2023 WL 3057416, at *3 (M.D. Fla. Apr. 24, 2023) (cleaned up).

In *Carlsen*, the court held the defendant would lose a substantial legal right of removal under CAFA if the plaintiff was permitted to voluntarily dismiss the case without prejudice to refile in state court to defeat diversity jurisdiction. 2023 WL 3057416, at *4-5 (M.D. Fla. Apr. 24, 2023). There, the court concluded "the substantive allegations [gave] rise to federal jurisdiction under CAFA," and that defendant had a "substantial right of removal." *Id.* at 3-4. The court explained that the substantiality of defendants' removal rights are properly "viewed through the lens of whether the substance of the actions granted federal jurisdiction." *Id.* at 4 (citing *Goodwin*, 757 F.3d at 1220).

The Eighth Circuit has taken a similar approach. *See Thatcher v. Hanover Insurance Group, Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011) (recognizing "the right to remove an action which falls within the jurisdiction of the federal courts is a substantial right"). The *Carlsen* court cited to *Thatcher* approvingly, and found its reasoning persuasive. *See Carlsen*, 2023 WL 3057416, at *4

(M.D. Fla. Apr. 24, 2023). The Eleventh Circuit opined that "*Thatcher* suggests that a defendant who properly removes an action to federal court may at least sometimes acquire a 'substantial right' to have the case heard in a federal forum." *Goodwin*, 757 F.3d at 1220 (quoting Thatcher, 659 F.3d at 1215).[1]

Here, similar to *Carlsen*, Insight has a substantial right of removal to federal court based upon diversity jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a). The substance of HBS' allegations in its Complaint gave rise to federal diversity jurisdiction based upon the citizenship of the parties and the amount in controversy. HBS' desire to seek voluntary dismissal to pursue its claims in arbitration is an improper attempt at forum shopping (long after it engaged in litigation conduct) to defeat Insight's substantial right of removal to federal court.

HBS strategically chose to sue Insight—a foreign defendant—in Florida state court pursuant to the Florida Agreement. HBS additionally served discovery in the State Court Action that is otherwise prohibited under the Tennessee Agreement HBS now wishes to invoke. HBS even moved for and obtained a Clerk's default in the State Court Action. Only after Insight removed the action to federal court, and filed its Answer, Affirmative Defenses, and Counterclaim, did HBS want to use voluntary dismissal as a "reset" button to relocate to arbitration.

Unlike *Goodwin*, HBS does not seek a voluntary dismissal to add a forum defendant to defeat diversity—a move the *Goodwin* court deemed a technicality and not a bar to dismissal. Nor does Insight object to the "mere prospect of a subsequent suit," Mot. at 1 (citing *Moss v. Saks Fifth Ave.*, No. 2:06CV668 FTM29SPC, 2007 WL 1141510, at *2 (M.D. Fla. Apr. 17, 2007)), which also does not bar a plaintiff from voluntarily dismissing their claims. *See McBride*, 189 Fed.App'x

---

[1] However, the Eleventh Circuit chose not to "enter that debate," finding the circumstances in *Goodwin* to be clearly distinguishable. *Id.* (holding plaintiff seeking voluntary dismissal to add a forum defendant was a technicality and that *Thatcher* did not bar a voluntary dismissal in that context).

7

at 877. Instead, like *Carlsen*, HBS seeks to modify *the substance of its Complaint* to defeat federal jurisdiction. This case presents the unique circumstances where a plaintiff moves to dismiss its claims to pursue them in a competing arbitration after having already filed a lawsuit and sought discovery and a Clerk's default on the same claims. That is, HBS, having been removed to federal court, now prefers to sue Insight in arbitration under a different agreement—the Tennessee Agreement, which HBS ignored until now and which, for reasons set forth in response to the motion to compel, facially does not apply to these claims. This is a strategic, calculated change—not a mere technicality. HBS wants to substantively modify its claims and proceed under the conflicting, inapposite Tennessee Agreement to avoid Insight's proper removal and potentially deny this Court's review of the judicial issues of arbitrability.

Notably, HBS does not wish to leave Insight's counterclaim pending independently before this Court, as it has moved to compel arbitration of Insight's counterclaim. Thus, HBS' intent is clear. HBS wants out of federal court. Unable to satisfy its burden to seek a remand, HBS now wants a voluntary dismissal (and an order compelling arbitration) so it can pursue its claims under the Tennessee Agreement and move this entire case to arbitration. This is an insufficient explanation, and frankly, mere gamesmanship. *See Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999) (holding courts should consider "whether the party has presented a proper explanation for its desire to dismiss, whether a dismissal would result in a waste of judicial time and effort, and whether a dismissal will prejudice the defendants" and also that "a party is not permitted to dismiss merely . . . to seek a more favorable forum.") (internal citations omitted); *Opacmare USA, LLC v. Lazzara Custom Yachts, LLC*, Case No. 8:16-cv-3288-T-33JSS, 2017 WL 4959436, at *2 (M.D. Fla. Nov. 1, 2017) (courts "should consider such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence ... in prosecuting

the action, [and] insufficient explanation for ... a dismissal," among others). HBS' forum shopping should not be countenanced. Especially, where, as here, it will deprive Insight of its substantial right of removal to federal court.

### 2. *Insight will Suffer Additional Legal Prejudice.*

In addition to losing its substantial right of removal, Insight will also suffer additional clear legal prejudice in having to litigate in an arbitration forum that HBS waived, and under a conflicting Tennessee Agreement that facially does not apply and that HBS initially ignored. That Agreement also purports to bar substantial legal rights, such as depositions and interrogatories in this complex billing and fraud case. HBS's tactics have wasted Insight's resources and judicial resources in defending this action in a judicial forum. Further, because Insight's Counterclaim must remain pending before this Court while HBS attempts to litigate its claim in an alternate forum, Insight is prejudiced both by the risk of inconsistent verdicts as well as the duplicative litigation.

Courts in the Eleventh Circuit have denied motions requesting voluntary dismissal where the dismissal would result in clear legal prejudice. *See McBride v. JLG Indus., Inc.*, 189 Fed. Appx. 876, 878 (11th Cir. 2006) (denying voluntary dismissal, finding defendant would be prejudiced noting the time that had passed since the case was filed, the many motions filed, and the discovery produced); *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1503 (11th Cir. 1991) (denying motion for voluntary dismissal where the plaintiff "filed her motion to dismiss voluntarily, and then her motion to amend, well over a month after the latest date on which she might have discovered the information that supported these motions after the pre-trial order was issued . . ."). Similarly, as is particularly relevant here given HBS' stated intent to arbitrate its claim, the Ninth Circuit has recognized "the dismissal of a party [that] rendered the remaining parties unable to conduct sufficient discovery to untangle complex fraud claims and adequately

9

defend themselves against charges of fraud" would amount to "legal prejudice" in the context of Fed. R. Civ P. 41(a). *See Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

Regardless, for the reasons set forth more fully in Insight's Motion to Enjoin Arbitration (D.E. 18) and its Opposition to HBS' Motion to Compel Arbitration (D.E. 24), HBS waived its right to arbitrate its claims. Insight will not repeat those same arguments here. But, suffice it to say that HBS waived its right to arbitrate its claims by taking affirmative actions inconsistent with its arbitration rights, including pre-litigation actions inconsistent with the arbitration provision in the Tennessee Agreement, filing its lawsuit in state court on allegedly arbitrable claims, serving discovery that directly conflicts with limitations in the arbitration provisions under the Tennessee Agreement, and litigating its claims under the Florida Agreement it attached to its Complaint.

Insight would suffer clear legal prejudice in having to defend against claims in arbitration after HBS waived its right to arbitrate those claims. Based on HBS's waiver, there is no longer any valid agreement to arbitrate. As such, Insight will suffer per se irreparable injury. *Merrill Lynch, Pierce, Fenner, & Smith v. King*, 804 F. Supp. 1512, 1515 (M.D. Fla. 1992) (holding that Merrill Lynch would suffer irreparable injury if required to arbitrate claims outside the scope of arbitration agreement).

Furthermore, relying upon HBS's decision to pursue its claims under the Florida Agreement in state court, Insight had to retain local counsel and make strategic decisions, including removing the case to federal court. Once there, Insight has had to expend substantial legal fees to defend itself in this litigation, including among other things, filing its Answer, Affirmative Defenses, and Counterclaim and participating in the preparation of the joint scheduling report and discovery plan. Because HBS filed its demand for arbitration prior to this Court having an opportunity to rule on the arbitrability of the claims, Insight also faces the prospect

of having to incur duplicative legal fees to defend the same claims in two different forums—one before this Court and the other in arbitration. *See Cent. Boat Rentals, Inc. v. Brown*, No. CV 20-1277, 2020 WL 5232422, at *3 (E.D. La. Sept. 2, 2020) (denying a motion to dismiss a counterclaim as both "judicially inefficient" and prejudicial to the opposing party because it would require the party to produce duplicative evidence in parallel proceedings).

Moreover, because Insight's Counterclaim must remain pending before this Court while HBS attempts to litigate its substantially interrelated claim in an alternative forum, Insight faces the risk of inconsistent verdicts and duplicative litigation. HBS may only voluntarily dismiss its claims pursuant to a court order "on terms that the court considers proper," and only if Insight's "counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). Here, there is an independent jurisdictional basis for Insight's Counterclaim—namely, diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).[2] Because Insight's Counterclaim would remain pending before this Court under diversity jurisdiction while HBS attempts to litigate its substantially related claim in another forum, Insight is prejudiced both by the possibility of inconsistent verdicts as well as the inefficiency of litigating in multiple forums to accommodate HBS' blatant forum shopping. *See Hamm*, 187 F.3d at 950 (holding courts should consider "whether a dismissal would result in a waste of judicial time and effort and "whether a dismissal will prejudice the defendants") (internal citations omitted); *Ibeto Petrochemical Indus., Ltd.*, 412 F. Supp. 2d at 290–91 (denying the plaintiff's motion to voluntarily dismiss its claim so that it could bring that claim in another forum because the defendant's pending counterclaim in the current forum meant "[p]ermitting two litigations on the same issues" and "could result in inconsistent verdicts—'the very risk that the rules of interpleader were created to avoid.'").

---

[2] HBS concedes that diversity jurisdiction exists. *See* D.E. 15, at 2.

In short, HBS' application of the standard for voluntary dismissal to the unique circumstances of this case is woefully inadequate. HBS has cited no case where a court has allowed a plaintiff to dismiss its claims with a counterclaim pending so that the plaintiff can litigate those already-filed-claims in arbitration—especially where the plaintiff has waived its right to arbitrate. Moreover, the cases cited by HBS are inapposite because they do not involve a plaintiff attempting to dismiss its claims after a defendant has exercised its substantive right of removal to federal court. Accordingly, the Court should deny HBS' Motion to Dismiss.

### B. Alternatively, if the Court Grants Dismissal of HBS' Claims, it Should Impose Conditions.

#### 1. *Any Voluntary Dismissal Should be Conditioned Upon Insight's Counterclaim Remaining Pending For Independent Adjudication.*

Insight filed its Answer, Affirmative Defenses and Counterclaim prior to HBS' motion to voluntarily dismiss its claims. HBS may therefore only voluntarily dismiss its claims pursuant to a court order "on terms that the court considers proper," and only if Insight's "counterclaim can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). As discussed above and as conceded by HBS, there is an independent jurisdictional basis for Insight's Counterclaim—namely, diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).

Accordingly, should the Court grant HBS's Motion, it should be conditioned upon Insight's Counterclaim remaining pending for independent adjudication, as independent diversity jurisdiction exists over the Counterclaim. *See Chamfer Eng'g, Inc. v. Tapco Int'l, Inc.*, 498 F. Supp. 129, 131 (S.D. Tex. 1980) ("Since it is uncontested that this Court would not have independent jurisdiction over the plaintiff if its complaint were dismissed, the plaintiff cannot voluntarily dismiss this action without the consent of the defendants."); *Verna IP Holdings, LLC v. Alert Media, Inc.*, No. 6:21-CV-00422-ADA, 2023 WL 11983711, at *1 (W.D. Tex. Feb. 8, 2023) ("Because [Defendant] pleaded its counterclaims before [Plaintiff] served its motion to dismiss,

the Court concludes that the action should not be dismissed without prejudice over [Defendant's] objection.").

However, for the reasons in Insight's Opposition to the Motion to Compel Arbitration, HBS should not be permitted to compel arbitration of the Counterclaim.

### 2. *Any Voluntary Dismissal Should be Conditioned on HBS's Payment of Insight's Legal Expenses.*

Should the Court allow HBS to voluntarily dismiss its claims, monetary conditions should be imposed. The Eleventh Circuit has expressly approved the awarding of litigation expenses and attorneys' fees in similar circumstances. *See McCants*, 781 F.2d at 860 ("[a] plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation," which "may include all litigation-related expenses incurred by the defendant, including reasonable attorneys' fees"). Additionally, the Florida Agreement under which HBS brought its claims provides for contractual attorneys' fees for the prevailing party. *See* D.E. 1, at Florida Agreement, §§ 9.7, 9.11.

Insight is a foreign defendant who was unwillingly haled into Florida state court. Insight has been forced to defend this case for three months and has spent substantial time, effort, and resources doing so, including hiring local counsel, removing this case, filing its Answer, Affirmative Defenses, and Counterclaim, participating in the preparation of the joint scheduling report and discovery plan, and now defending against HBS's change of heart to move to arbitration. Insight has therefore incurred significant attorneys' fees and costs in defending this action. But, based upon HBS's alleged position, this case never should have been filed in a judicial forum, and instead should have been arbitrated. HBS should not be permitted to simply walk away from the

judicial forum it chose after prosecuting this case and forcing Insight to incur a substantial amount of attorneys' fees and costs.

For the foregoing reasons, HBS's Motion should be denied. Alternatively, the Court should condition any dismissal of HBS's claim on allowing Insight's Counterclaim to remain pending for independent adjudication, and it should require HBS to pay Insight's litigation expenses incurred in defending this action to date.

Dated: December 31, 2025

/s/ George S. LeMieux
George S. LeMieux, Esq.
Florida Bar No. 16403

**GUNSTER, YOAKLEY & STEWART, P.A.**
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Telephone: 954-468-1383

George S. LeMieux, Esq.
Florida Bar No. 16403
glemieux@gunster.com
eservice@gunster.com
mzayas@gunster.com
Lauren A. Marcil
Florida Bar No.: 1002832
lshumate@gunster.com

CLANCY ADVISORS, PLC
Saura J. Sahu (pro hac vice)
2723 S. State Street, Suite 150
Ann Arbor MI 48104
Telephone: 734-780-7595
sahu@clancyadvisors.com
www.clancyadvisors.com

*Attorneys for Defendant, Insight Chicago, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on December 31, 2025, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *George S. LeMieux*
George S. LeMieux, Esq.