UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-62231-CIV-SINGHAL

HEALTH BUSINESS SOLUTIONS, LLC,
a Florida limited liability company,

    Plaintiff/Counter-Defendant

v.

INSIGHT CHICAGO, INC.,
an Illinois corporation.

    Defendant/Counter-Plaintiff
_____/

**HEALTH BUSINESS SOLUTIONS, LLC'S REPLY AND MEMORANDUM OF LAW TO DEFENDANT/ COUNTER-PLAINTIFF, INSIGHT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANT, HEALTH BUSINESS SOLUTIONS, LLC'S, MOTION TO COMPEL ARBITRATION**

    Health Business Solutions, LLC ("HBS"), files this Reply and Incorporated Memorandum to Defendant-Counterclaimant Insight Chicago, Inc.'s ("Insight"), Response in Opposition to HBS's Motion to Compel Arbitration (the "Motion").

## BACKGROUND

    In its state court Complaint, HBS alleges that on December 1, 2021, the parties executed the Self-Pay MSA, and that pursuant to that agreement, HBS provided services to Insight for medical collections and Insight failed to pay for those services. *See* Complaint, ¶ 6-10 [D.E. 1].[1]

    In response, Insight filed a Counterclaim. *See generally* [D.E. 13]. Throughout the 157 paragraph Counterclaim, Insight disputes the applicability of the Self-Pay MSA and claims that if the Self-Pay MSA is the governing contract, HBS exceeded the scope of the Self-Pay MSA.

---

[1] Following the filing of the Complaint, HBS realized that Insight did not have any outstanding invoices for self-pay medical claims, thus, there was likely no (known) breach of the Self-Pay MSA. HBS immediately moved to voluntarily dismiss its claims under the Self-Pay MSA and initiated arbitration with the AAA pursuant to the terms of the Insurance-Pay MSA.

Attached to Insight's Counterclaim as Composite Exhibit A are invoices issued by HBS for the collection of insured claims. Insight alleges the invoices contain inflated line items. These invoices arise out of the Insurance-Pay MSA. Specifically, the Insurance-Pay MSA states "the specific scope of Services, as agreed by the Parties during the Term, shall be set forth in statements of work (each, a 'Service Agreement')." Insurance-Pay MSA, §1.1. Attached as Exhibit 2 to HBS's Motion to Compel Arbitration, is one such "Statement of Work" ("Statement of Work"). *See* [D.E. 16]. While Insight refutes the applicability of the Statement of Work (couching it as a simple pitch deck), page 6 of the Statement of Work sets forth clear, unmistakable billing standards. Specifically, it states, in part:

> **Contingent Fees**
> HBS shall provide Insight with AR denied, rejected, claim management Services for assigned accounts and Insight agrees to provide HBS accounts regardless if previously worked.
> - Cost plus contract – monthly staffing invoice plus 1.75% of collections
>
> **Denials/AR Collections**
> - All AR and denied claim recoveries (0-120 days aged from discharge) associated with the HBS team are subject to a 6.50% fee of payments received
> - Accounts 120 – 280 days aged from discharge: 12.5% fee of payments received
> - Accounts 280+ days aged from discharge: 20% fee of payments received
> - Fees will decrease as Insight revenue increases
>
> | Revenue | 0-120 | 120 - 280 | 280+ |
> |---|---|---|---|
> | <$10M | 6.50% | 12.50% | 20.00% |
> | $10.1 - $15M | 6.00% | 12.00% | 19.50% |
> | $15.1M - $20M | 5.50% | 11.50% | 19.00% |
> | $20.1M+ | 5.00% | 11.00% | 18.00% |

This Statement of Work is plainly in line with the amounts charged to Insight following the execution of the agreement. For example, the very first invoice issued after this Statement of Work was executed, which is attached to Insights Counterclaims, shows:

| | Bill To | | | | |
|---|---|---|---|---|---|
| | Insight<br>2525 S. Michigan Ave.<br>Chicago, IL 60616 | | | | |

| | Location | P.O. No. | Terms | Project |
|---|---|---|---|---|
| | | | Net 25 | Insight |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | Insight Staffing - December 2021 | 116,295.00 | 116,295.00 |
| | Contingency Fee ($2,504,203 x 1.75) | 43,823.55 | 43,823.55 |

Specifically, the "1.75%" contingency multiplier is the exact contingency multiplier contemplated by the parties in the Statement of Work—executed just 30 days prior to the issuance of the invoice. Moreover, both the Insurance-Pay MSA and the Statement of Work were seemingly executed simultaneously. The signature page of the Insurance-Pay MSA shows:

| **Insight Chicago** | | **Health Business Solutions, LLC.** | |
|---|---|---|---|
| By: _[signature]_ | | By: _[signature] Ray Berry_ | |
| Print Name: Ali Madha | | Print Name: Ray Berry | |
| Title: Chief Operating Officer | | Title: CEO | |
| Date: 11/30/2021 | | Date: 12/31/21 | |

while the signature page of the Statement of Work shows:

**Signatures**

| Hospital | | Health Business Solutions | |
|---|---|---|---|
| Signature: _[signature]_ | | Signature: _[signature]_ | |
| Name: Ray Berry | | Name: Ali Madha | |
| Title: CEO | | Title: Chief Operating Officer | |
| Date: 12/31/21 | | Date: 11/30/2021 | |

Thus, the Insurance-Pay MSA, which contemplates the collection of insurance medical claims and the subsequent, or, in this case, simultaneously executed Statement of Work, controls. Insight correctly concedes the Self-Pay MSA does not apply to the invoices attached to Insight's Counterclaim. Therefore, Insight's Counterclaim, which arises out of HBS insurance payment collection services, must be arbitrated pursuant to the Insurance-Pay MSA. Insight cannot be permitted to disavow the Self-Pay MSA in its Counterclaim and then beg its application to avoid arbitration.

## INCORPORATED MEMORANDUM OF LAW

### I.     Applicable Standard

While Insight disputes the applicable standard, there is not much room for debate. "The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter consideration." *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019) (citing *Schriever v. Navient Solutions, Inc.*, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014)). The policy underlying a trial court's application of Rule 12(b)(1) is that 12(b)(1) permits the trial court to "consider matters outside of the four corners of the complaint." *Id.*

To compel arbitration under the FAA, the movant must establish that: 1) a written agreement to arbitrate exists; 2) a nexus to interstate commerce exists; and 3) the arbitration clause covers the claims. *Steele v. Santander Consumer USA, Inc.*, No. 14–60741–CIV–FAM, 2014 WL 4049963 (S.D. Fla. Aug. 15, 2014) (Moreno, J.) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

Whether a written agreement to arbitrate exists is a threshold issue for the trial court, and not the arbitrator, to decide. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). It is when ruling on this threshold question—and the concomitant issue of whether a jury trial on

contract formation is necessary—when a summary judgment-like standard applies. *Id.* Accordingly, depending on the applicable issue, either a 12(b)(1) standard or a summary judgment standard may apply. Underlying both standards, however, is a court's ability to look past the four corners of the pleadings to rule on the motion to compel arbitration.

### II. Insight Has Not Provided Any Evidence to Rebut Contract Formation Therefore a Jury Trial is Unnecessary

Unclear from Insight's Response is the questions it believes are properly resolved by the Court and the questions that are properly resolved by a jury—being that Insight has invoked its right to a jury trial under 9 U.S.C. § 4. In any event, Insight hasn't made the necessary showings to warrant a jury trial.

When a party invokes its right to a jury trial under the FAA, the threshold question of contract formation is submitted to a jury. *See* 9 U.S.C. § 4. However, a court may conclude as a matter of law that the parties entered into an arbitration agreement if there is no genuine dispute of material fact concerning the *formation* of the arbitration agreement. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017). "When there is no such dispute, a trial is unnecessary." *Id.* In deciding whether there is a dispute of material fact as to formation, a summary judgment standard applies. *Id; see also Bazemore v. Jefferson Cap. Sys., LLC,* 827 F.3d 1325, 1333 (11th Cir. 2016). "A dispute is not genuine if it is unsupported by evidence or is created by evidence that is merely colorable or not significantly probative." *Bazemore*, 827 F.3d at 1333 (cleaned up).

Here, Insight does not provide this Court with any evidence to avoid the formation of the Insurance-Pay MSA.[2] No affidavits, no e-mail correspondence, no superseding agreements, and

---

[2] Citing, *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021), Insight argues Florida law applies to this Court's evaluation of contract formation. Whether applying Tennessee law or Florida law, the elements of contract formation are the same. *See Jericho All-Weather Opportunity Fund, LP v. Pier Seventeen Marina & Yacht Club, LLC*, 207 So. 3d 938, 941 (Fla. 4th DCA 2016) ("The basic elements of an enforceable contract are offer, acceptance, consideration, and sufficient specification of essential terms."); *see Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) ("In order to enforce a contract in Tennessee, the contract

no dispute that Insight's Chief Operating Officer executed both the Insurance Pay-MSA and the Statement of Work. Insight's only argument is that "the Tennessee Agreement [(the Insurance-Pay MSA)] facially does not apply." *See* [D.E. 24 at 11]. However, as set forth herein, the Insurance-Pay MSA contemplates the collection of insured claims and a subsequent "statement of work." Exhibit 2 to HBS's Motion to Compel is one such "statement of work." Moreover, the invoices issued immediately subsequent to the Insurance-Pay MSA's execution comport with the provisions of the Statement of Work. *See* Counterclaim [D.E. 13], Ex. A.

Accordingly, there is a signed agreement wherein mutual promises were exchanged. Moreover, by issuing invoices in compliance with the Statement of Work, the parties acted in accordance with the agreements. Insight omits *any* evidence supporting its argument that the Insurance-Pay MSA is not a validly formed agreement. As such, there is no dispute of material fact as to contract formation (such as fraud, mistake, or duress) and a jury trial on contract formation is unnecessary. *Larsen*, 871 F.3d at 1308. The Insurance-Pay MSA is a valid agreement to arbitrate.

### III. Application of the Agreement is Decided by the Court

Admittedly, *Coinbase, Inc.* would require this Court to determine which contract applied prior to compelling arbitration. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 145, 144 S. Ct. 1186, __ (2024). In *Coinbase*, the Supreme Court stated "before [the conflicting provisions such as a] forum selection clause can be enforced, a court needs to decide what the parties have agreed to—i.e., which contract controls." *Id.*

Fortunately, Insight concedes the Self-Pay MSA does not apply to the invoices attached to its Counterclaim. *See e.g.* Counterclaim ¶ 36 [D.E. 13] ("By its express terms, the [Self-Pay MSA] only covers 'self-pay and self-pay after insurance accounts,' (Pl.'s Ex. 1, Sched. 1A § 1.1), which

---

must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced.").

are accounts for which the recipient of medical care—rather than insurance—is directly and chiefly responsible for payment."); *see e.g.* Counterclaim ¶ 37 [D.E. 13] ("Nothing in that [Self-Pay MSA] sets forth terms authorizing collections for insured claims."); *see e.g.* Counterclaim ¶ 47 [D.E. 13] ("HBS immediately began to generate invoices demanding substantial sums for items *not* contemplated by the [Self-Pay MSA]."); *see e.g.* Counterclaim ¶ 51 [D.E. 13] ("Upon information and belief, these early invoices apply to contingency fees to insured (non-self-pay) claims").

While Insight also disputes the applicability of the Insurance-Pay MSA, such disputes are not genuine as the invoices plainly align with the Insurance-Pay MSA and simultaneously executed Statement of Work. Accordingly, the Insurance-Pay MSA controls.

**IV.     Waiver**

Insight incorrectly claims that state-law applies to this Court's determination of waiver. *See Amargos v. Verified Nutrition, LLC*, 653 F. Supp. 3d 1269, 1274-75 (S.D. Fla. 2023) (applying federal law to test for waiver of the contractual right to arbitrate). "[T]he correct standard to be applied is a totality of the circumstances test that determines whether the Defendant acted inconsistently with its contractual right to arbitration." *Id.* at 1275. Here, HBS has not acted inconsistently with its contractual right to arbitration where it filed its Motion to Compel Arbitration within 21 days of Insight's Counterclaims and no substantial litigation has taken place regarding the Insurance-Pay MSA. *See, e.g., Grigsby & Associates, Inc. V. M Securities Inv.*, 635 Fed. Appx. 728, 733 (11th Cir. 2015); *Smith v. Pay–Fone Sys., Inc.*, 627 F.Supp. 121, 124 (N.D. Ga. 1985); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 530 (S.D.N.Y. 2024); *Palmer v. Navient Solutions, LLC*, No. 3:17-CV-657-J-39JBT, 2018 WL 1863829, at *2 (M.D. Fla. Jan. 31, 2018), report and recommendation adopted, No. 3:17-CV-657-J-39JBT, 2018 WL 11344770 (M.D. Fla. Apr. 18, 2018).

Moreover, Insight's argument as to pre-litigation conduct constituting grounds for waiver is unsupported. *See Singh v. MEDNAX Services, Inc.*, 2018 WL 5098962, at *4 (S.D. Fla. 2018) ("A failure to raise the issue of arbitration is relevant to the analysis of waiver only to the extent that a party delays in demanding arbitration after a pleading is filed raising arbitrable issues."); *see also Miletak v. Wells Fargo Bank, N.A.*, No. 25-14083-CIV, 2025 WL 2427669, at *4 (S.D. Fla. July 24, 2025), *report and recommendation adopted*, No. 2:25-CV-14083-KMM, 2025 WL 2427677 (S.D. Fla. Aug. 15, 2025) ("Engaging in pre-suit communications without invoking an arbitration agreement does not waive a party's right to arbitrate."); *Prcic v. Carnival Corp.*, 641 F. Supp. 3d 1313, 1320 (S.D. Fla. 2022) ("Finding no authority suggesting that a defendant can waive its rights to arbitration based on pre-litigation conduct, the Court agrees with the Defendants.")

Because HBS's conduct does amount to waiver of its right to arbitrate, this Court should compel arbitration.

## **CONCLUSION**

In its Counterclaim, Insight repeatedly disavows the application of the Self-Pay MSA to the invoices attached to its Counterclaim. That is because the invoices arise out of the Insurance-Pay MSA and contemplated Statement of Work. The Insurance-Pay MSA requires that all disputes between the parties be arbitrated. Now, to avoid the arbitration agreement the parties executed, Insight also disputes the applicability of the Insurance-Pay MSA, reversing course to claim the Self-Pay MSA *does apply*. Insight may not utilize the Self-Pay MSA as both the shield and the sword.

Moreover, Insight omits any evidence to refute the formation of the Insurance-Pay MSA, thus, a jury is not warranted. It also omits any analysis of how HBS waived its right to invoke the rights of a contract never at issue in this Court. The Motion to Compel Arbitration of Insight's

Counterclaim should be granted—otherwise, HBS is left with no forum to seek damages for Insight's non-payment.

Respectfully submitted,

**OLIVE JUDD, P.A.**
*Attorneys for Health Business Solutions, LLC*
2426 East Las Olas Blvd.
Fort Lauderdale, FL 33301
Phone: (954) 334-2250
Fax: (954) 334-2259

/s/ Benjamin E. Olive
Benjamin E. Olive, Esq.
Fla. Bar No.: 387983
bolive@olivejudd.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on January 7, 2026, and served electronically via the Court's CM/ECF system on all attorneys of record.

**OLIVE JUDD, P.A.**
*Attorneys for Health Business Solutions, LLC*
2426 East Las Olas Blvd.
Fort Lauderdale, FL 33301
Phone: (954) 334-2250
Fax: (954) 334-2259

/s/ Benjamin E. Olive
Benjamin E. Olive, Esq.
bolive@olivejudd.com
Fla. Bar No.: 387983
Christian R. Leto, Esq.
Fla. Bar No.: 1048760
cleto@olivejudd.com
James M. Buis, Esq.
Fla. Bar No.: 1068447
jbuis@olivejudd.com