UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-62231-CIV-SINGHAL

HEALTH BUSINESS SOLUTIONS, LLC,

Plaintiff/Counter-Defendant,

vs.

INSIGHT CHICAGO, INC.,

Defendant/Counter-Plaintiff.
_______________________________________/

**ORDER**

The parties have long-standing billing disputes dating back to 2021. Insight Chicago, Inc. ("Insight") owns and operates a hospital in South Chicago. Health Business Solutions, LLC ("HBS"), a Florida-based company, provides Insight with customer service, accounts receivable, and collection services. HBS sued in Florida state court to recover roughly $8 million in unpaid invoices that it alleges Insight wrongfully refuses to pay. Insight removed the case to federal court and filed a counterclaim on various grounds. HBS subsequently located a purported contract between the parties that includes a mandatory arbitration provision. Thus, HBS moves to compel arbitration of Insight's counterclaim (DE [16]) and voluntarily dismiss its own claim (DE [15]), which it now presses in arbitration. For the reasons discussed below, the Motion to Compel Arbitration (DE [16]) is denied.

## I. BACKGROUND

In June 2021, Insight took over a bankrupt hospital that serves an underprivileged area of South Chicago. (DE [13] ¶¶ 10-12). HBS was an existing contractor to the bankrupt hospital and Insight elected to continue the relationship. *Id.* ¶¶ 14-16. HBS provided Insight with various billing services, including customer service and accounts

receivable management. As relevant here, HBS was responsible for collection of both "self-pay" and "insurance-pay" accounts. HBS was the only external vendor providing such services to the hospital. *Id.* ¶ 17.

Billing disputes between the parties quickly arose. HBS alleges that Insight failed to pay for services HBS rendered to the hospital. (DE [1] p. 13). Insight, on the other hand, alleges that it consistently disputed HBS's invoices, services, quality of work, and compliance with federal regulations. (DE [13] ¶¶ 26, 99). The parties were unable to resolve their disputes despite several settlement negotiations.

In September 2025, HBS issued Insight a demand letter seeking to recover roughly $8 million in unpaid invoices pursuant to a Master Agreement dated December 1, 2021 (the "Florida Agreement"). (DE [1] p. 34). Attached was a copy of the Florida Agreement and an itemized statement of invoices for periods between June 2023 and August 2025 (the "Unpaid Invoices"). *Id.* p. 49. HBS also notified Insight that it was terminating the contract pursuant to Section 6.4 of the Florida Agreement. *Id.*

HBS then filed a two-count Complaint in Florida state court for accounts stated and breach of the Florida Agreement. The Florida Agreement provides that disputes shall be governed by Florida law and, notably, does not include an arbitration clause. *Id.* But, as it turns out, the Florida Agreement does not apply to the Unpaid Invoices for which HBS demands payment. The parties now agree that the Florida Agreement only applies to collection of "self-pay" accounts, while the Unpaid Invoices reflect collection of "insurance-pay accounts." (DE [27] p. 2; DE [13] p. 18). HBS concedes that, to its knowledge, there are no outstanding self-pay invoices under the Florida Agreement. (DE [27] p. 1).

After Insight filed its counterclaim, HBS claims that it "identified a second contract" between the parties that governs collection services for insurance-pay accounts (the

"Tennessee Agreement"). (DE [16] pp. 1-2). Thus, HBS argues that the Unpaid Invoices properly arise under the Tennessee Agreement. That Agreement includes the following arbitration provision:

> All Disputes that cannot be resolved pursuant to the procedure set forth in Section 11.1 shall, except as provided herein, be solely and finally settled by binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the AAA Rules").

(DE [16-1] p. 11). It further provides that arbitration must take place in Nashville, Tennessee pursuant to Tennessee law. *Id.*

Accordingly, HBS now insists that the parties' dispute, including Insight's counterclaim, must be resolved in arbitration under the Tennessee Agreement. *See generally* (DE [16]). HBS therefore initiated arbitration proceedings under AAA Case No. 01-25-000-93794 and filed the present Motion to Compel Arbitration. *Id.* p. 2. Despite first seeking recovery of the Unpaid Invoices in a Florida state court, HBS contends that this Court must refrain from hearing Insight's counterclaim and compel the parties to arbitrate the same underlying invoices.

II. <u>LEGAL STANDARD</u>

"The Federal Arbitration Act, 9 U.S.C. § 1 et seq. [("FAA")], enshrines a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1319 (11th Cir. 2024) (quotations omitted). "[A]rbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—a national policy—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citation modified). "But the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v.*

*Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018).

## III. DISCUSSION

HBS maintains that Insight's counterclaim arises solely out of the parties' Tennessee Agreement and therefore must be compelled to arbitration. *See generally* (DE [16]). HBS also argues that by incorporating the AAA Commercial Rules into the Tennessee Agreement, the parties have committed the issue of arbitrability to the arbitrator. *Id.* p. 4. In opposition, Insight advances three arguments: (1) the Tennessee Agreement and its associated "Statement of Work" do not constitute a valid contract between the parties[1]; (2) HBS is judicially estopped from relying on the Tennessee Agreement; and (3) HBS has waived any purported right to arbitration. The Court agrees that HBS has waived any right to arbitration it may have had and denies the Motion on that ground alone.

### A. HBS waived the right to arbitration.

Even where a contract includes a valid arbitration clause, it is well established that a party can waive its right to compel arbitration. *See e.g.*, *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022); *Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023). "There's no set rule as to what constitutes waiver of an arbitration agreement." *Pinnacle Constructors Grp. LLC v. SSC Tuscaloosa Apartments LLC*, 2024 WL 3042536, at *2 (11th Cir. June 18, 2024). Rather, the Court

[1] Insight requests a jury trial under the FAA on the issue of contract formation. (DE [24] p. 13-14).

must determine whether, under the totality of the circumstances, the party asserting the right to arbitration has "acted inconsistently with its arbitration right." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990), *abrogated on other grounds by Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). "A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (cleaned up).[2]

HBS's actions in pressing its claim (i.e., recovery of the Unpaid Invoices) evidence a clear pattern of behavior inconsistent with the arbitration provisions of the Tennessee Agreement. Indeed, until Insight hinted at the existence of a second contract, HBS proceeded solely under the Florida Agreement. In doing so, HBS took the following actions:

- On September 2, 2025, HBS sent Insight a demand letter seeking payment of the Unpaid Invoices pursuant to the Florida Agreement. (DE [1] p. 34).
- In the same letter, HBS purported to terminate its relationship with Insight in accordance with Section 6.4 of the Florida Agreement. *Id.*
- On September 29, 2025, HBS filed a complaint in the 17th Judicial Circuit in and for Broward County, Florida, alleging that the Unpaid Invoices were due under the Florida Agreement. In filing suit, HBS availed itself of the governing law and venue provisions of the Florida Agreement. *Id.* p. 12.
- In the state court action, HBS served initial discovery disclosures and discovery requests on Insight. *Id.* pp. 51-67.

---

[2] Insight argues that state law, rather than federal, governs the issue of waiver. (DE [24] p. 20). It is true that courts have not been entirely consistent on this point. *Compare Falvo v. Atl. Specialty Ins. Co.*, 2025 WL 278022, at *4 (M.D. Fla. Jan. 23, 2025) *with Amargos v. Verified Nutrition, LLC*, 653 F. Supp. 3d 1269, 1275 (S.D. Fla. 2023). But, as Insight notes, "HBS has acted inconsistently with its arbitration rights here and failed the federal test any way." (DE [24] p. 20). Moreover, the Eleventh Circuit has repeatedly applied the "acted inconsistently" standard after the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). *See Warrington*, 2023 WL 1818920, at * 2.

- On October 28, 2025, HBS sought and obtained an entry of default against Insight in the state court action. *Id.* pp. 76-77.
- After Insight removed the case to federal court, HBS participated in discovery conferences and moved this Court for an extension of time to file a Joint Scheduling Report. (DE [17]).

HBS insists that it did not act inconsistently with its right to arbitration, as it filed the present Motion to Compel Arbitration within 21 days of Insight's counterclaim – the first pleading that raised the existence of the Tennessee Agreement. (DE [27] p. 7). In its view, it was simply an error to attach the Unpaid Invoices (which arise out of insurance-pay collections) to its state court Complaint under the Florida Agreement (which only governs self-pay collections). *Id.* p. 2. But HBS's mistake was not pursuing a non-existent claim for outstanding self-pay invoices. Rather, the error was pressing a claim in court to recover the Unpaid Invoices under the wrong contract, in direct conflict with the dispute resolution and arbitration provisions of the Tennessee Agreement. To be sure, the Court can understand HBS's counsel's reliance on the Florida Agreement, as it appears the parties operated for years as if that was the governing document. But a party need not affirmatively invoke a contract to act inconsistently with it. *See Lewis v. Keiser Sch., Inc.*, 2012 WL 4193366, at *3 (S.D. Fla. Sept. 18, 2012).

The Court does not conclude that any one of HBS's actions,[3] standing alone, is necessarily sufficient to find a waiver of the arbitration right. But viewing the facts under the totality of the circumstances, as it must, the Court finds that HBS acted inconsistently with the arbitration provisions in the Tennessee Agreement. *See Warrington*, 2023 WL 1818920, at * 2. While HBS initially proceeded under the Florida Agreement, it was its decision to "invoke[] the litigation machinery prior to demanding arbitration." *Gutierrez*,

---

[3] The Court would note that the confusion or lack of awareness of the two contracts was part of HBS's initial litigation strategy in this case. Current counsel who have been on this case for only two months did not engage in this approach but must play with the hand they've been dealt.

889 F.3d at 1236. Insight, being forced to defend HBS's claim in court, was entitled to rely on HBS's waiver of arbitration. Accordingly, the Court concludes that HBS waived its right to compel arbitration under the Tennessee Agreement.

## IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that HBS's Motion to Compel Arbitration (DE [16]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 16th day of September 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF